## The City of Detroit v. Henry Weber and others.

*City charter: Treasurer: Official bond: Condition: Common council.* Where
the charter of a city makes the treasurer an elective officer, and directs that he
shall give bond with certain specified conditions, including an absolute and
unqualified obligation for a faithful accounting for money, and also declares
that the bond "may be further conditioned as the common council shall. pre-
scribe," the council cannot, under the pretext of further conditions, add any
thing to destroy, or conflict with, any of the statutory conditions, or substi-
tute a conditional liability where the charter requires an absolute one; the
bond must contain every thing mentioned in the charter, and as much more
as the council may require. but no less.

*City treasurer: Official bond: Common council: Ordinance: Sureties.* The
council having no power to insert in such bond any provision for a qualified
responsibility in place of the absolute one required by the charter, the fact
that one of their committees has failed to comply with an ordinance requiring
it to make monthly examinations of the treasurer's accounts, and report any
defalcation, etc., to the bondsmen and to the council, cannot operate to release
the sureties; no condition will be implied which it is unlawful to insert in
express terms.

*Ordinance construed: City treasurer: Sureties on official bond.* The ordinance,
if it was designed, or can be construed, to relieve the sureties from liability
under any circumstances for the misconduct of the treasurer, would be in
direct violation of the charter; but it is not open to such a construction; it
was passed to protect the city interests alone, and the sureties had no right to
rely upon it.

*Ordinance: Notice: Contract: Bond: Condition.* The notice to the bonds-
men, provided for by such ordinance, is no part of their contract, and is not a
condition of their liability.

*Sureties: Diligence.* Sureties, like other men, are bound to use some diligence
for their own protection; and if they fail to do so, it is their own fault.

*Misrepresentations: City controller: Ordinance: Official bond: Sureties.* Mis-
representations of the city controller as to the compliance of such committee
with such ordinance in the past, made to the sureties before executing the
bond, being statements of fact concerning matters of record, can have no effect
in releasing the sureties from liability.—COOLEY, J., dissenting.

And his promises to them that the committee would in future comply with
the ordinance are at least equally immaterial.

*Heard July 13. Decided January 8.*

Error to Wayne Circuit.

*D. C. Holbrook, City Counselor,* for plaintiff in error.

*Moore & Griffin, G. V. N. Lothrop* and *Theodore Romeyn,*
for defendants in error.

COOLEY, J.

The defendants were sureties for Edward S. Leadbeater, on his official bond as treasurer of the city of Detroit, from January, 1870, to January, 1872. Leadbeater had held the office for the two preceding terms, and, as it now appears, was a defaulter during both terms, and in arrear at the giving of the bond now in suit.

It also appears that during all the time there had been a provision by city ordinance, as follows:

"It shall be the duty of the committee on ways and means to examine, at least once in each month, the books, papers, vouchers, securities, deposits and disbursements of the said treasurer; and in case they find any defalcation, discrepancy or irregularity in the same, to at once notify his bondsmen thereof, and also to report the same to the council at the next session."

This, however, had never been complied with by the committee. And the defendants gave evidence tending to show that the controller of the city, before the execution of the bond by them or any of them, represented to them that it was the practice and duty of the committee of ways and means, to make the examinations required by the ordinance; that they had theretofore been made, and should be regularly made thereafter, at least once in every month, and in case of any defalcation, discrepancy or irregularity of the treasurer, they should at once be notified thereof; that the defendants, relying on the ordinance and these assurances, executed the bond, which they would not otherwise have done.

The circuit judge, on the request of defendants, charged the jury as follows:

" If the jury find from the evidence, that each of the defendants relied on the provisions of the ordinance as affect-

ing and limiting their several responsibility; that the controller, for and in behalf of said city, before the execution of the bond by them, or either of them, represented to them, and each of them, that it was the practice and the duty of the committee of ways and means of said city, to make such examination, and that such examination had theretofore been made, and should be regularly made thereafter, at least once in every month; and that in case of any defalcation, discrepancy or irregularity of said treasurer, they should at once be notified thereof; and the defendants, severally relying on said assurance and said evidence, executed said bond, and said controller knew such to be the fact; and then further find that the said treasurer was a defaulter at any time when it had become the duty of said committee to make such examination; and if the same committee of ways and means failed and neglected to make the examination, report, and give the notice required by said ordinance, the defendants are not liable on said bond, for any moneys thereafter received by said treasurer."

This charge, and the evidence on which it was based, was objected to by the plaintiff, and a judgment having passed for the defendants in the court below, the plaintiff removes the case to this court for a review of the action of the circuit judge in overruling these objections.

So far as the declarations of the controller were an assurance that the committee would thereafter make the examinations as required by the ordinance, they did not go beyond the presumption of law, that persons in official positions will perform their duty. Such declarations, consequently, appear to me to be of no importance whatever. If defendants had a right to rely for their protection upon the examinations provided for by the ordinance, they had it independent of these assurances, and if they were not at liberty to rely upon the ordinance, no assurance of the

controller or of any other official, could bind the city to any oral undertaking not incorporated in the bond itself. To this extent, therefore, the declarations could not possibly affect the case.

So far, however, as they related to the past, and went to assure the defendants that the examinations had theretofore been made, the case is different. To that extent they were assertions of matter of fact, and were baseless. It was not claimed in the court below, that they were made by the controller fraudulently or with the intent to deceive, but that they were untrue, and that they did deceive. The treasurer had already been a defaulter for two terms; the committee which by the ordinance were charged with the duty of examining his accounts periodically, had wholly failed to do so, and may fairly be said to have been guilty of gross neglect of duty. The fact of default would tend greatly to increase the risk of those who should become the treasurer's sureties for a third term, and prudent men would not consent, with knowledge of the facts, to place themselves in that position.

The controller was the financial officer of the city, and supposed to be familiar with its financial concerns. He makes assertions regarding matters with which he should be familiar, but about which, as it turns out, he was wholly mistaken. Relying upon these assertions, parties are induced to undertake obligations for another city officer, which they would not have undertaken otherwise. They suppose, and are told, they are to undertake for the official conduct of an officer, who, in the same position, has proved himself worthy of public trust; when the facts are, he has long been a defaulter, and is entirely unworthy of confidence. And now the question is, whether the city has a right to enforce against these parties an obligation which was only obtained by means of these unfounded representations of its

financial officer, on a point which went directly to the substance of the contract, and which, as it intimately concerned the finances, he would reasonably be supposed to know about.

Had the representations of the controller been fraudulently made, there could be no question, I suppose, that the sureties might avoid their obligation. But I think it immaterial that they were made in good faith. He is applied to for information, and assumes to give it. He is the proper person to apply to, and the parties have a right to believe they can rely upon what he says. They do rely upon it, and are deceived. If the obligation they entered into in consequence of this deception, is enforced against them, they are defrauded. The question now is, upon whom should the loss fall; the city, whose officers have been so remiss in their duty to prevent it, or these defendants, who have only been induced to promise indemnity to the city, by deceptive statements by the city's financial agent, going directly to the risk of such indemnity. Upon this point I have no difficulty. It is well settled in this state, that the law must have regard rather to the effect of untrue statements in inducing parties to act, than to the motive with which they were made. The fraud consists in a party being induced to act to his prejudice by untruthful statements made by another upon whom he had a right to rely, and whose duty it was, in response to inquiries, to state the case truly.—See *Tong v. Marvin, 15 Mich., 60; Converse v. Blumrich, 14 Mich., 109; Beebe v. Young, 14 Mich., 136; Comstock v. Smith, 20 Mich., 338.*

I have made considerable examination for precedents where the facts were similar to the present, but without success. In *Ætna Life Insurance Company v. Mabbett, 18 Wis., 637,* it was held that an answer to a suit against the sureties, in a bond given by an insurance agent to his

principal, which averred that the company took the bond, fraudulently concealing the fact that the agent was then a defaulter, showed no legal defense.    There, however, it was not shown that the sureties applied for information and were misled, and the only question was, whether the company was bound voluntarily to disclose damaging facts. The case of *State v. Bates, 36 Vt., 398*, has more resemblance to the present.    That was a suit against the sureties of the state treasurer.    For previous years the auditor had reported regular settlements with him, and a full accounting.    In fact, however, he had embezzled moneys received for the state in each of those years, and this fact, when afterwards discovered, was relied upon as a defense to the sureties.    But there was no averment that the auditor had been guilty of any default or negligence in his examinations or reports; only that an embezzlement existed which would appear to have been concealed with such skill that he had failed to discover it.    "Nothing," say the court, "short of an act, on the part of the state officers, indicating a want of good faith towards the sureties; such as the concealment of the truth, or the suggestion of what was false, in respect to a material fact, should be allowed to affect the validity of their obligation on the bond."    Such a suggestion of what was untrue, is precisely what is relied upon here.

This view would dispose of the case if it distinctly appeared that the jury found, or must have found, that these representations were made by the controller as charged. Such, however, is not the fact.    The case shows that evidence was offered tending to prove them, but it is consistent with the verdict, that the jury may not have been satisfied with that evidence, and may have based their conclusion on the fact that the committee of ways and means subsequently failed to make the examinations, and to notify

26 mich.—37.

the sureties as the ordinance required, which they were instructed by the judge would be equally fatal to the plaintiff's case. It becomes necessary for us, therefore, to consider whether this instruction was correct.

And this, as it seems to me, must depend upon the question, whether the regulation established by the ordinance was one exclusively for the protection of city interests, or, on the other hand, was one in part at least, for the protection of the sureties. If it was the former, the sureties cannot complain of its violation; if the latter, it must be deemed a law in reference to which their undertaking was made, and a failure on the part of the city to comply with it, if resulting to their prejudice, would release them.

It has been repeatedly decided that a law for a periodical examination of accounts and settlement with a public officer, is one upon which the sureties of the officer have no right to rely.— *U. S. v. Kirkpatrick, 9 Wheat., 720 ; U. S. v. Vanzandt, 11 Wheat., 184; U. S. v. Nicholl, 12 Wheat., 505; Dox v. Postmaster General, 1 Pet., 317; State v. Atherton, 40 Mo., 209 ; Ex parte Christian, 23 Ark., 641; Christian v. Ashley County, 24 Ark., 142.* This is upon the ground that the regulation is established for the benefit of the government, and not of the sureties. These decisions are in point here, unless the clause appearing in this ordinance, which directs notice to be given to the sureties of any defalcation, discrepancy or irregularity, is to distinguish this case from them. It will distinguish it, if the purpose of the clause had the protection of the bondsmen in view. In that event the clause must be treated as mandatory. Whether the ordinance has any such purpose, I have had grave doubts; but on most mature reflection I am inclined to hold that the sureties are not at liberty to rely upon the ordinance for their protection. As my brethren have all reached this conclusion, and have expressed their

views separately, I abstain from any discussion of the question, but content myself with the conclusion that the judgment must be reversed, with costs, and a new trial ordered.

CAMPBELL, J.

The only questions presented by the bill of exceptions and argued before us, relate to the effect on the liability of defendants, to be derived from a failure of the city authorities to live up to the ordinance requiring periodical examinations of the accounts and transactions of the city treasurer of Detroit.

The charter of Detroit makes the treasurer an elective officer, and directs that he shall give bonds, with certain specified conditions, including an absolute and unqualified obligation for a faithful accounting for money. It also declares that the bond " may be further conditioned as the common council shall prescribe."

It would not be a sensible or safe construction to hold that, under the pretext of further conditions, the council could permit any provision to be introduced which should destroy or conflict with any of the statutory conditions. Those are not left discretionary. They may be added to by requiring further duties from the treasurer, but none of the duties prescribed can be remitted. The bond must secure every thing mentioned in the charter, and as much more as the council may require, but no less. And where the statute requires an absolute liability, the council cannot substitute a conditional one.

If there were no ordinance on the subject, and the council, instead of requiring a bond in the statutory form, had agreed to receive a bond conditioned for the performance of the treasurer's duties so long as the committee on ways and means should make monthly examinations and reports, and should punctually inform the sureties of the treasurer's

defaults, and no longer, it cannot be seriously claimed that a bond in that form would be such an official bond as the charter requires. The law compels the council to secure the safety of the public funds, by requiring permanent and unconditional security. The council has no plenary power to do as it may see fit with the city funds. They must be dealt with according to law, and not according to the unrestrained will of any one.

If the council has power to allow such a qualified responsibility to be substituted for the absolute one required by law, it would certainly be lawful to insert in the bond any provision to which the bond could be lawfully subjected. It can never be unlawful to insert an express condition in precise agreement with one which is implied.

If the ordinance in question can justify a discharge of sureties for the neglect of a committee of the council, it can only be for the reason: *first*, that the council had a right to accept a bond less stringent than the charter requires; and *second*, that the existence of the ordinance operates upon the bond so as to introduce into it by implication such a variation from its express terms, which conform to the statute.

The ordinance is a wise and salutary one, which, if carried out, would secure the city and the sureties from serious risk and loss. But if it was designed, or can be construed, to relieve the sureties from liability, under any circumstances, for the misconduct of the treasurer, it would be in direct violation of the charter. I think it is not open to any such imputation.

Had it contained no provision for notifying any one but the common council, of the default of the treasurer, it cannot be claimed that it would be any thing more than a directory ordinance, giving no redress to private persons for its violation. I cannot see that the direction to notify

such parties should make any difference in its character in this respect. It is only by assuming in advance that such notice is a part of their contract, and a condition of their liability, that such a construction can be maintained. But this is begging the whole question.

The ordinance in dispute is not the origin, or, in any sense the foundation, of the treasurer's office, or of the conditions on which he is to hold it. Both are independent of it. There was no obligation, and there could have been no lawful agreement, to keep the ordinance in force a single day after the bond was accepted. It might have been repealed entirely, or modified so as to dispense with any of the requirements, or the whole subject might have been referred to some other committee with entirely different powers. The whole subject was under the control of the council, who might have abolished the committee altogether.

It is impossible to distinguish the case from any other case where the neglect of one public servant to perform his duties, is set up as a reason why the sureties of another should be released from responsibility for the misconduct of their own principal, in no way caused by that neglect, but only made public later than it would have been if there had been no neglect. There is no rule of law which would justify such a release.

Even the hardship of enforcing the law in such cases is much exaggerated. Sureties, like other men, are bound to use some diligence for their own protection. The council meetings are frequent and public. They had every facility for knowing whether the committee reported monthly. If they desired such action, the council would doubtless have called for it, if attention had been brought to the neglect. The sureties were more directly interested than any one else in having the examinations made. The city was well

secured by sufficient bonds.   While this is no reason for neglect to watch over the finances, it is very likely to lead to. it.   It may always be assumed that sureties will not undertake for strangers, and that they have both the means and the occasion to keep themselves informed concerning the habits and character of their principal.   If they do not choose to take the trouble, it is their own fault.

The alleged misrepresentations of the controller cannot be placed, I think, on any other footing.   If the city can be bound by the statements of any of its officers, to become its own insurer against the misconduct of its officials, their bonds would be of very little use.   Equity has sometimes held it fraudulent to obtain security, when there was no legal obligation to give it, by falsely concealing from the sureties who were invited to become responsible, the fact that an agent was dishonest, and already in default.   But however that doctrine may affect private persons who ask security, it can have no application to public agents. The law, superior to any ordinance or act of the city, requires their bonds as conditions of office.   They, and not the city, are moving parties in obtaining securities.   The city is bound to accept any sureties that are shown to be adequate, and cannot require particular names.   It is not at all interested in knowing how they have been induced to sign the bonds, or to get information, and a city officer who volunteers it, is not, in doing so, performing any act of authorized agency which can bind the public.   His assurances as to the future are of no force.   His statements of fact concerning matters of record, and which he is no more bound to know than any member of the council, can have no more value than his promises.

The judgment should be reversed, and a new trial granted.

GRAVES, J., concurred.

CHRISTIANCY, CH. J.

After a careful consideration of this case, I am reluctantly compelled to concur in the opinion of my brother Campbell,—reluctantly, because if the treasurer's sureties, acting in good faith, were misled by the controller's representations, upon which they thought they had a right to rely, and upon the ordinance which required the committee frequently to examine the treasurer's accounts and to report to the council and to the sureties any delinquency, and were thereby induced to sign the bond which they would not otherwise have done, it is a hardship upon them to hold them liable for the treasurer's default; and as between them and the controller, as well as between them and the committee who neglected their duty, it is unjust and inequitable.

The question, however, is not between the controller or the committee and these sureties, but between the people of the city in their corporate capacity, or the tax payers whose money goes into the treasurer's hands for public purposes, on the one side, and the sureties who have undertaken for the treasurer's fidelity, and thereby enabled him to obtain the custody of that money, upon the other.

The very purpose of the charter, in requiring the treasurer to give this bond with sureties, was to secure the public, the people, the tax-payers of the city, against the loss of any of the money placed in the hands of the treasurer, awaiting expenditure for public purposes.

Now, whatever may be the abstract equity of the matter, it will not do to say, that because the people of the city control the election, and, indirectly, the appointment of the city officers, therefore, the people, in their corporate capacity, should bear the loss arising from their official delinquency. This reasoning would dispense with the giving of any official

bonds with sureties, by any of them.    The legislature have not seen fit to adopt such a rule of responsibility, but have required that the public, the people, notwithstanding they thus control the election and appointments of the officers, shall have the security of an official bond, with competent sureties, for the performance of their official duties.    They have required this not only in the case of the controller and the treasurer, but in that of the clerk, attorney, receiver of taxes, superintendent of the house of correction, collector, marshal, clerk of the market, street commissioner, and constable, some of whom are elected directly by the people, and others appointed by the council, which *is* so elected; they have placed all of these upon the same footing of responsibility, and prescribed what shall be the condition of their official bonds, allowing the council to prescribe additional conditions not inconsistent with those fixed by the charter; and provided that none of these officers shall enter upon the duties, or exercise the powers, of their respective offices, until such bond shall be given. But these bonds apply to and secure *only* the performance of the *official* duties of the respective officers, and have no reference to, and afford no security for or against, any acts or omissions not pertaining strictly to official duties of their respective offices; and these strictly *official* duties are, in all cases, prescribed by the charter, or by ordinances which the council have the power to adopt.    By *no* other than *strictly official* acts or omissions, can the interests of the people, in their corporate capacity, be affected; and for no other is the security of a bond required.    We cannot, therefore, hold the city responsible in any way for the representations or misrepresentations of the controller, claimed to have been made in the case, and that the treasurer's bond was therefore void as to the sureties, unless satisfied that it was so clearly a part of the controller's official duty, to

give correct information as to the examination of the treasurer's accounts by the committee, to these persons proposing to become sureties for the treasurer, that any misrepresentation, or failure to give the correct information, would, *of itself*, constitute a *breach* of the *controller's* official bond, for which the city might recover against him and his sureties, the damages accruing from the treasurer's bond having been, in this manner, rendered void as to the sureties.

Now it will hardly be claimed, that any such official duty has been imposed upon the controller by the charter, or by ordinance, nor, therefore, that his representations, or misrepresentations, claimed to have been made, constituted a breach of his official bond.

Hence, if the sureties upon the treasurer's bond are to be discharged in consequence of these representations of the controller, the city will be deprived, by the *unofficial* act of one of its officers, of the security which the legislature required of another officer, as a condition of his being allowed to hold the office, and without any right to resort to the official bond of the officer whose representations led to this result; in other words, the loss from any delinquency of the treasurer must fall upon the city, as if no official bond had been required of, or given by, the treasurer. This would defeat the intention of the legislature, as clearly expressed in the charter.

I do not think it competent for any city officer thus to defeat the legislative will, by annulling the security which the legislature saw fit to require for the benefit of the city. Nor do I think it any more competent for the council, by ordinance, to accomplish the like result by dispensing with the bond, or modifying the effect of its condition as prescribed by the legislature.