MAINE MUTUAL MARINE INSURANCE COMPANY *vs.* JOSEPH M. HODGKINS *et al.*

Penobscot, 1876.—November 16, 1876.

*Fraud.*

The defendant signed this agreement: "We the undersigned agree to advance our notes for premiums in advance, to the insurance company, to the amount set against our names in accordance with the charter of the company," which provides that such notes are for the better security of those concerned. The defendant signed such a note and contested the action brought upon it, on the ground, that the plaintiffs' agent procured his signature to the agreement, without a reading of it on his part, by falsely representing that the note was to be given for an open policy to be surrendered when payable on payment of premiums earned. *Held*: that it was not error for the presiding justice to instruct the jury that the signing without reading was his own folly and not the fraud of the agent.

ON EXCEPTIONS AND MOTION.

ASSUMPSIT on a promisory note, set out in the opinion.

66 | 109
67 | 384
83 | 233

*Defense:*—a conditional note, fraud in its inception, and failure of consideration.

The plaintiff company in whose name the action was prosecuted by receivers for the benefit of the insured, was incorporated by an act of the legislature, March 16, 1870. Section 9, of their charter provides that "the company for the better security of those concerned may receive notes for premiums in advance of persons intending to receive policies, and may negotiate such notes for the purpose of paying claims or otherwise in the course of its business; and a compensation to the signers thereof may be allowed and paid at a rate to be determined by the trustees, but not exceeding six per cent per annum." It was decided in *Howard* v. *Palmer,* 64 Maine, 86, that the notes given under this 9th section were valid. In the case at bar the jury found specially that the note in suit was given under the 9th section ; that the signature of the defendants to the agreement to advance notes for premiums in advance was not obtained by fraud, and returned a general verdict for the plaintiff for $1,075.07.

The defendants claim that these findings were under erroneous instructions; that they gave the note because they signed the agreement marked "A," set out in the opinion ; and that they were induced to sign the agreement without reading it, by the false statements of Howard, who was appointed by the company to obtain signatures to it, and who represented that the note to be given was for an open policy to be surrendered when payable, on payment of premiums earned upon the open policy.

Upon this point the presiding justice said to the jury : "Now, it is claimed, that it is procured by fraud. The charge is a grave one, when made against a gentleman of standing ; and the burden is upon him who makes it to prove it. The defendant is a gentleman of standing ; he says he did not read this paper. If so, that is his folly and is not fraud. He says that Mr. Howard asked him to sign, saying, if I have his exact words, 'I have so many persons to get, and I want to know who they are ; so I took my pen and signed it.' It would be fraud to misread a paper to a blind man, or to one who could not read; but signing a paper without reading is not fraud. Neither is it fraud if one misapprehends, and

misapprehending, misstates the legal effect of an instrument. It is a matter of every-day occurrence that questions arise as to what is the proper construction to be given to an instrument; and a construction given in good faith is not fraud."

To this and other rulings which appear in the opinion, the defendants alleged exceptions.

*W. H. McCrillis,* for the defendants.

The language of the court to the jury implied that a fraudulent intention was necessary, Judge Story, Eq. § 193, says that such intent is not necessary and wholly immaterial. It is immaterial whether Howard knew his assertions were false, or made them without knowing them to be true or false.

Apparent sincerity, affected piety, cunning, duplicity and falsehood, frequently, all play a part in the drama of fraud, and all combined would often fail of success without extreme folly and credulity on the part of the victim of the fraud. Want of vigilance does not purge fraud in civil cases. Other points taken by counsel appear in the opinion.

*C. P. Stetson* with *A. W. Paine,* for the plaintiff.

APPLETON, C. J. The defendants with fifty others signed the following agreement marked A.:

"We the undersigned agree to advance our notes for premiums in advance to the Maine Mutual Insurance Company to the amount set against our names respectively, in accordance with the charter and by-laws of the company."

The defendants signed for $1,000.

At a meeting of the plaintiff corporation on the 11th April, 1870, the defendant Hodgkins was voted in as a member of the corporation.

On 24th April, 1870, he gave the following note upon which this action is brought:

$1,001.                                    "Bangor, 26 April, 1870.

Eight months after date, we promise to pay to the order of the Maine Mutual Insurance Company, one thousand and one dollars, payable in Bangor, Maine, value received.

                                        J. M. Hodgkins & Co."

Across the end of the note is stamped "Given for open policy, No. 25, duly stamped."

The defendant Hodgkins testified that he gave the note because he had signed the agreement marked A.

This brings the case within that of *Howard* v. *Palmer*, 64 Maine, 86, the jury having specially found that the note was given under § 9, of the charter of the plaintiff corporation.

But it is claimed that paper A, was fraudulently obtained and material evidence to show it was excluded.

·The defendant testified that he signed it without reading it, but claimed to show it fraudulently obtained. The presiding justice ruled that if Howard, who procured his signature, falsely represented its contents or what the paper was, it might be shown. The defendant then testified that this Howard called at their office and asked them to take a policy for eight months; this was the last of April he thought, and after talking a few minutes he explained the whole to us, that is, he said if we had any insurance we paid at the end of eight months and our notes were to be given up to us. We consented to take an open policy. Before he left the counting room he put that paper down. Witness was in a hurry and said, "why, do you want us to sign the paper," and he said, "I have got a good many policies to get and I want to know who they are when I get through," so witness took his pen and signed it, and that, he said, is all of it.

The whole evidence, therefore, in relation to procuring the defendants' signature to the contract A, was ultimately received.

The note in suit, as one of the defendants testified, was given subsequently to the signature of paper A, and because these defendants had signed it.

The defendants offered to show what was said when the note was given, and the open policy for which it was given, was received.

The defendants were permitted to show that it was given for an open policy, and the open policy which is in the usual form, was received in evidence.

The defendants wanted to prove what was said at the time the note was given and the open policy received by them, but the court excluded this evidence. The note was given for the policy.

The note purports to be given for an open policy. The policy obtained is an open policy. The conversations of parties which ripen into a written contract are not to be received to affect or control that contract. The rights of the parties are to be determined by the contract. Nor is the contract to be avoided because one party or the other may err in their construction of its legal effect. If so, no contract, the meaning of which becomes a matter of construction, could be upheld.

The issue to the jury was whether the note in suit was given for "premiums in advance" under § 9 of the charter and for the better security of the dealers with the company or not. The jury found it was so given.

In regard to the question of fraud, the court said : "the defendant says he did not read this paper A. If so, that is his folly and is not fraud. He says Mr. Howard asked him to sign, saying, I have so many persons to get and I want to know who they are, so I took my pen and signed it. It would be fraud to mis-read to a blind man or to one who could not read; but signing a paper without reading it is not fraud. Neither is it fraud if one misapprehends and, misapprehending, misstates the legal effect of an instrument. It is a matter of every day occurrence that questions arise as to what is the proper construction to be given to an instrument ; and a construction given in good faith is not fraud."

This is unquestionably sound law, and if further instructions were deemed important they should have been requested.

The jury were instructed fully that the note was, as it purports to be, given for an open policy, and what were the general principles of law governing such policies. Indeed, the law as requested by the counsel for the defendants was given substantially as requested, with the qualification added, that though given for an open policy, if it was given under § 9, for the "better security of the dealers" with the company, that the plaintiffs were entitled to recover, in the absence of fraud on their part. This was in accordance with the previous decisions of this court in reference to notes given the plaintiff corporation.

It is objected that the presiding justice did not state accurately the testimony of Howard. If so, the attention of the court should

have been called to the alleged error, and the correction could then have been made, if there was any error. But it is too late now.

The verdict was in strict accordance with the evidence.

*Motion and exceptions overruled.*

WALTON, DICKERSON, BARROWS and VIRGIN, JJ., concurred.

PETERS, J., did not sit.