BEARD ET AL., APPELLANTS, v. BLILEY, APPELLEE.

1. APPELLATE PRACTICE.

Where there is any legal, competent evidence to sustain the verdict, it will not be disturbed; and where the evidence is conflicting and contradictory, the court will not attempt to decide upon the credibility of witnesses or weight of evidence.

2. FRAUD.

Actual or positive fraud consists in deception practised in order to induce another to part with property, or to surrender some legal right, and which accomplishes the end designed. The deception must relate to facts then existing or which had previously existed, and which were material to the dealings between the parties in which the deception was employed. In order to render it actionable, it should appear that the representations were made as alleged, that they were made in order to influence the plaintiff's conduct, that, relying upon them, the plaintiff did enter into a contract, or otherwise act as desired, that the representations were untrue, that the plaintiff suffered damage from the action he was induced to take, and that this damage followed proximately the deception.

3. SAME.

A mere speculative statement or expression of opinion is not of itself a sufficient basis of an action for fraud.

4. BURDEN OF PROOF.

Fraud is never presumed. The party relying upon fraud must prove it.

5. QUANTUM OF PROOF.

Proof of fraud must be sufficient to overcome the legal presumption of honesty, which obtains in all cases.

*Appeal from the District Court of Pitkin County.*

Messrs. WILSON & SALMON, for appellants.

Mr. T. M. S. RHETT, for appellee.

REED, J., delivered the opinion of the court.

Appellant A. A. Beard had an interest in a lease and bond upon a mine; sold a portion of it to the appellee, for which appellee made his promissory note, dated August 22, 1889, for $800, payable one year after date, with interest at one per cent per month; secured it by a trust deed upon his property in the town of Aspen. The mine failed to pay, and two or three months after the execution of the note work was suspended and the property abandoned by the lessees. After the maturity of the note, it was assigned by A. A. Beard to his wife, E. R. Beard. Appellant Donegan was trustee in the deed of trust, and at the instance of the Beards proceeded to advertise the property for sale to pay the money secured by it, whereupon appellee brought suit to restrain the sale of the property, alleging in the complaint that appellant fraudulently obtained the note and deed of trust by misrepresentations in regard to the value of the mining interest for which the note was given, and the condition and product of the mine, and, in effect, that there was want of consideration for the note; also that the note was assigned by A. A. Beard to his wife, E. R. Beard, without consideration, and in fact remained the property of A. A. Beard.

The allegations of the complaint were traversed in the answer, and upon the issues so made a trial was had. A jury was called and the two following questions of fact were submitted for its determination:

" *First.* Did defendant A. A. Beard make to the plaintiff, Bliley, the representations set forth in the complaint in good faith?

" *Second.* Did plaintiff rely on the representations made to him by said Beard, if so made?"

The questions, though rather inartificially drawn, were sufficient to present the issues submitted. 1st. Whether representations were made. 2d. Whether they were accepted and acted upon by Bliley and were the inducement in the transaction, and whether true and made by Beard in good faith, or were knowingly false and fraudulent.

After hearing the evidence of the respective parties and being properly charged by the court, the jury returned findings, answering the first question in the negative and the second in the affirmative, fully establishing the allegations of fraud in the complaint. The court adopted the findings of the jury, and filed a decree perpetually restraining the defendants from proceeding to collect the note and that the trust deed made to secure it be canceled. From such judgment and decree an appeal was prosecuted to this court.

It is contended in argument that the evidence was insufficient to warrant the findings of the jury, and that the court erred in adopting such findings and in decreeing the note void. This is the only ground relied upon for a reversal. The province and duties of a jury are as well defined as those of the judge of the trial court or the judges of this court. The court had the right and authority to submit questions of fact to the jury, and unless some legal principle is violated and the verdict is the result of incompetent and inadmissible evidence, or it is evident that it results from the misapplication of the law of evidence, or it is apparent that through willful and criminal prejudice or bias the finding is at variance with all the evidence in the case, courts have neither power nor inclination to invade the province of that branch of a trial court. It is not enough, on the printed testimony presented to a court of review, that the court concludes, by the reading of the evidence, that the jury should have found differently. The jury and witnesses are brought together, and the jury are to consider not only the matter testified, but the character and credibility of witnesses. It is their peculiar province. While one man's evidence, when printed and filed in a court of review, may appear equally

as truthful and reliable as that of another, there may have been upon the trial circumstances or incidents rendering it absolutely unworthy of credit, facts of which this court could have no information; and when, as in this case, the only important facts rest upon the contradictory and conflicting statements of the two principals, if any finding is made by the jury, one or the other must go to the wall. The finding as to credibility cannot be reviewed in this court. The rule of both the supreme court and this court has been frequently stated and reiterated, that where there is any legal competent evidence to sustain the verdict it will not be disturbed; and where the evidence is conflicting and contradictory, the courts will not attempt to decide upon the credibility of witnesses or weight of evidence, but must adopt the conclusions of the jury.

The basis of the suit upon which equitable relief was asked was, that the note and deed of trust were obtained by fraudulent misrepresentations of the value and condition of the mining property, for the purchase of which the note was given. " Actual or positive fraud consists in deception practised in order to induce another to part with property or to surrender some legal right, and which accomplishes the end designed. The deception must relate to facts then existing or which had previously existed, and which were material to the dealings between the parties in which the deception was employed. In order to render it actionable the following facts should appear:

" First, that the representations were made as alleged.

" Second, that they were made in order to influence the plaintiff's conduct.

" Third, that, relying upon them, the plaintiff did enter into a contract, or otherwise act as was desired.

" Fourth, that the representations were untrue.

" Fifth, that the plaintiff suffered damage from the action he was induced to take; and

" Sixth, that this damage followed proximately the deception." Cooley on Torts, secs. 474, 475.

"Fraud in equity properly includes all acts, omissions and concealments by which an undue and unconscientious advantage is taken of another." Story's Eq. Juris., sec. 187; 1 Fonb. Eq., b. 1, chap. 263.

In *Green v. Nixon*, 23 Beav. 330, it was said: "Fraud implies a willful act on the part of one, whereby another is sought to be deprived, by unjustifiable means, of what he is entitled to."

In *Detroit v. Weber*, 26 Mich. 284, it was said: "Fraud consists in a person being induced to act to his prejudice by untruthful statements made by another upon whom he had right to rely, and whose duty it was to state the case truly." See also, *Sellar v. Clelland*, 2 Colo. 532; *Byard v. Holmes*, 34 N. J. 296.

Taking the well settled rule of law, that the fraudulent statements must relate to facts then existing, or which had previously existed and which were material, etc., we find two of the alleged representations, which were speculative matters of opinion and resting in the future, withdrawn from consideration, viz., that he, Beard, was about to go east soon, and could and would dispose of the lease at large profit to all interested; that he was about to put machinery on the premises and wanted the plaintiff to set it up and run the same; leaving only the following:

First, that the lease was paying expenses and that plaintiff would not have a dollar to pay in the way of assessment.

Second, that he and the other lessors had secured from the owners an extension of the lease of the mine.

Taking up the latter first, we find the statement to have been substantially, though, perhaps, not technically, correct. There had been no written extension, but there was an existing agreement for one, which was afterwards indorsed upon it and executed. It is contended that the statement was false, as Beard represented that the lease was to be extended according to its terms, whereas it contained requirements more burdensome than the original. It is only necessary to say that nothing of the kind appears in the written indorse-

ment extending the lease. One witness testified there was to be 50 feet of " dead work " done, but that could not add to or change the written agreement. The admission of the testimony is urged as error. Technically it probably should not have been allowed, but I cannot see how any one was prejudiced by it, and it appearing that before the expiration of the original lease plaintiff abandoned and ceased to prosecute work on the mine because of losses sustained, we are at a loss to understand what pertinency there was in the whole inquiry in regard to the truth or falsity of the statement, when we apply the rule that in order to be actionable the statement must have been such that " the plaintiff suffered damage by reason of it." No such injury was shown or attempted.

The only remaining alleged false statements were, that the lease was paying expenses and plaintiff would have no assessments to pay. The first was a matter of fact resting of necessity within the knowledge of the defendant, and of which the plaintiff could gain no knowledge by an examination of the property, and that supposed fact, together with the expectation of profits from more extensive and economical work, must be regarded as the inducement to the purchase. The latter statement, that no assessments would be required, being in the future, must be regarded as speculative and an expression of opinion, and could not of itself be the basis of an action.

The evidence in regard to the statement that the mine was paying expenses was contradictory, but the jury evidently found the fact for the plaintiff. That it was false, and was not and never had been paying expenses was fully established by uncontradicted testimony, and the fact that plaintiff, for his small interest, was charged some $90 per month for the first two months, shows that it fell far short of paying expenses. The sale for less than cost and the sale to Silver of another interest at about the same time, at a reduced price, payment to be made in clothing, were circumstances going

far to establish the willful falsity of the statements and deliberate fraud of the defendant.

It is urged in argument, that plaintiff's case failed for want of proof, and that the court erred in finding for the plaintiff, and the following is cited from *Southern Development Co. v. Silva*, 125 U. S. 247 : " The answer of the defendant is direct, positive, and unequivocal in its denials of the allegations of the bill, and, as an answer on oath is not waived, unless these denials are disproved by evidence of greater weight than the testimony of one witness, or by that of one witness with corroborating circumstances, the complainant will not be entitled to a decree ; and this effect of the defendant's answer is not weakened by the fact that the equity of the complainant's bill is the allegation of fraud. *Vigel v. Hopp*, 104 U. S. 441 ; Story Eq. Jur. § 1528 ; Daniell Ch. Pr. 844. The burden of proof is on the complainant; and unless he brings evidence sufficient to overcome the natural presumption of fair dealing and honesty, a court of equity will not be justified in setting aside a contract on the ground of fraudulent representations."

It is a well known fact that the rules, practice and requirements of the federal courts are peculiar to those courts, based upon a series of rules adopted from the old English equity practice, and pertain to purely equitable cases. Those rules have no place in practice in the state courts and cannot prevail here. The modern and controlling doctrine in state courts is stated as follows:

(Cooley on Torts, 556, 557 :) " Fraud is never presumed, and the party alleging and relying upon it must prove it. This, however, is one of those rules of law which is to be applied with caution and circumspection. 'So far as it goes, it is based on a principle which has no more application to frauds than any other subject of judicial inquiry. It amounts but to this, that a contract, honest and lawful on its face, must be treated as such until it is shown to be otherwise by evidence of some kind, either positive or circumstantial.' Fraud is therefore as properly made out by marshaling the

circumstances surrounding the transaction, and deducing
therefrom the fraudulent purpose, when it manifestly appears,
as by presenting the more positive and direct testimony of
actual purpose to deceive; and, indeed, circumstantial proof
in most cases can alone bring the fraud to light, for fraud is
peculiarly a wrong of secrecy and circumvention, and is to
be traced not in the open proclamation of the wrongdoer's
purpose, but by the indications of covered tracks and studious
concealments.   And while it is often said that to justify the
imputation of fraud, the facts must be such as are not expli-
cable on any other hypothesis, yet this can mean no more
than this, that the court or jury should be cautious in deduc-
ing the fraudulent purpose; for whatever satisfies the mind
and conscience that fraud has been practised is sufficient."

It is the well settled doctrine that in all cases the presump-
tion is in favor of honesty, and in civil proceedings fraud re-
quires no higher measure of proof than is required in many
other cases.   It must be sufficient to overcome the legal pre-
sumption of honesty.   See *Hill v. Reifsinder*, 46 Md. 555;
*Baldwin v. Buckland*, 11 Mich. 389; *Bowden v. Bowden*, 75
Ill. 143; *London etc. Bank v. Lempriere*, L. R. 4 P. C. 527;
*Smith v. Chadwick*, L. R. 9 App. Cas. 187; *Hildreth v. Sands*,
2 Johns. Ch. 35; *Devoe v. Brandt*, 53 N. Y. 462; *Kane v.
Weigley*, 22 Pa. St. 179.

In our view of the case, no serious error occurred upon the
trial.   The facts necessary to constitute a cause of action
having been found by a jury, the finding and decree of the
court were warranted and should be affirmed.

*Affirmed.*