DINGLE v. TRASK ET AL.

1. FRAUD—FRAUDULENT REPRESENTATIONS.

A representation, to entitle a party to maintain a suit because of its utterance and its falsity, must be of some material fact which was a determining factor in the transaction. The party to whom it is made must rely on it to his injury, must be without knowledge of its truth or falsity, and it must be reasonably certain that he would not have acted as he did but for the making of the statement.

2. SAME.

Generally, a party will not be relieved from a condition of his written contract on the ground that it was inserted wrongfully and without his knowledge when he executed the instrument without examination and failed to protect his rights by the exercise of ordinary busi-ness care and prudence.

*Error to the District Court of Arapahoe County.*

Mr. S. E. BROWNE, for plaintiff in error.

Messrs. CRANSTON, PITKIN & MOORE, for defendants in error.

BISSELL, J., delivered the opinion of the court.

Dingle brought this suit against Trask and the bank to recover for the wrong which he insists was committed in the procurement by them of a chattel mortgage on his stock of goods. The defendants demurred to the complaint. Final judgment was entered and the case comes here by writ of error. The insufficiency of the complaint in its statement of the representations which are the bases of the action will admit of a very brief statement of the pleading. According to its allegations, Dingle was indebted to the Union National Bank of Denver, in November, 1891, on a note for $3,500. None of this note had been paid, except $500, and the interest up to February, 1893, which was the date of the execution of the instrument of which he complains. At that time he was carrying on the drug business in Denver, at the corner of 17th and Curtis, and had a stock on hand according to his statement of the value of $10,000. He would seem to have owed no money except this $3,000 to the bank, $450 to another party, and a couple of hundred dollars in small amounts to other persons. Whether these were absolutely the sum total of his indebtedness is not certain, but inferentially this appears from the complaint. The terms of the note to the bank are not stated, though presumably the indebtedness had been running upwards of a year and on renewals of the paper, for banks seldom make commercial loans for a longer period than ninety days. Mrs. Dingle was a joint maker of the paper, and in her own right was possessed of property of the value of $12,000. It thus seems the note was good and the bank in no danger of losing its debt. At all events Dingle averred that if he had known what the bank contemplated and their intention to enforce the security which he was about to give, he would have declined to execute it, and paid off the debt. Just why, if this was true, he

did not carry out his intention after the bank had taken possession of his store is not very evident, for if he could have done it in one case, he certainly could in the other. After the bank took possession of the stock, a couple of small attachments, amounting to something like $200, were levied on the stock, and to this farther extent Dingle was embarrassed in his business. The expenses of caring for the store are stated, the annual value of the business in profits is alleged, and otherwise it may be said the plaintiff stated in general the harm which came to him by reason of the transaction. This statement is enough to show the character of the suit. Nothing further need be set out but the representations alleged to have been made and what the pleader states concerning their character and the reliance which he put on them.

Only two representations are averred. The first is about the purpose of a third person, to whom Dingle was indebted in about the sum of $400, to sue out an attachment on his debt. It is put as a declaration by Trask that a party unnamed in the pleading was about to sue out an attachment. Dingle says he relied on this statement. Then follows a narrative of the subsequent proceedings, which amounts to a statement that he thereupon went with Trask to an attorney's office a very short distance from his store to execute a chattel mortgage to secure the note which had been given to the bank. Dingle admits the purpose of his going. There had evidently been a discussion between him and Trask concerning the execution of the mortgage and he had evidently agreed to make it. He avers no fraud or misrepresentations concerning the giving of the security other than the antecedent statement as to the prospective attachment, but he goes on to allege that when he got to the office of the attorney he executed an instrument of security on his stock in trade for the amount of the unpaid balance of the note. He then avers that within five minutes the bank took possession of his store. The only representation concerning the instrument was a statement made by somebody, who is unnamed in the pleading, that the security was an ordinary chattel

mortgage in the long form in use in the city. Dingle then avers that it was not the usual long form mortgage with the ordinary condition found in the printed form with respect to the possession of the property by the mortgagor. He avers this had been carefully erased and another written in, which gave the mortgagee the right to take immediate possession of the stock. This right was exercised within five minutes of the time of the execution of the instrument. Dingle states he did not read it, nor know of this insertion until after the parties had taken possession. He claims to have been a successful druggist in the city of Denver for twenty years, solvent, and possessed of the business confidence of the community. He was evidently a man of intelligence and business ability and fully competent to protect his own interests.

The issue of law which was raised by the demurrer is an exceedingly narrow one and was correctly resolved against the plaintiff in error. The first represensation respecting the suing out of an attachment is clearly not such a representation as will furnish the basis of an action. What a representation must be to entitle a party to maintain a suit because of its utterance and its falsity has been settled by a long series of adjudications. It must undoubtedly be of some material fact and must be a determining factor in the transaction. The party to whom it is made must rely on the representation to his injury, must be without knowledge of its truth or falsity, and it must appear to the court to be reasonably certain that the complaining person would not have acted as he did but for the making of the statement of which he complains. This rule has been laid down by all the text writers and has been expressly approved by repeated decisions of the courts of this state. *Beard v. Bliley*, 3 Colo. App. 479; *Wheeler et ux. v. Dunn et ux.*, 13 Colo. 428; *Adams v. Schiffer et al.*, 11 Colo. 15.

The representation about the attachment in no measure comes up to these requirements. It was not a representation concerning a material matter. It could not have furnished

a motive for or been the inducement to the execution of the security. If the allegations in this complaint be true, an entirely solvent person, who is the owner of a stock of goods amounting to $10,000, and who is indebted, according to his own statements, only to the extent of about $3,500, cannot be seriously embarrassed by the threat of an attachment for $450. This must be true in the present case if Dingle's statements are to be taken against him, for he avers had he known of the terms and conditions of the mortgage, he would not have executed it, but would simply have paid off the bank's debt of $3,000. If the plaintiff was able to pay off such a debt, he certainly could not have been influenced to execute a security because of the threatened attachment. His allegations respecting this attachment are not of themselves enough to entitle him to maintain the suit. An allegation that he relied on the statement will not do. We are not advised, except inferentially, that he owed the debt of $450, nor are we apprised of the nature and character of the indebtedness and whether it was of the sort which would furnish a basis for an attachment. If an attachment could not have been sued out, the plaintiff had no right to rely on the statement. Without a disclosure concerning this fact, the complaint is manifestly insufficient.

We have very little more trouble with the other representation. The pleader did not make clear what was said about the terms of the instrument, nor concerning the party who made the statement. It may be true the ordinary form of a chattel mortgage on personal chattels does not provide that the mortgagee shall take immediate possession. There is no allegation that such is the practice, nor does it appear by proper averment that the insertion was an unusual one respecting the kind of property which was covered by the security. Whether the statement came from Trask, who claimed to be the owner, from the attorneys who prepared the instrument, or from the person who took the acknowledgment, we are not advised. Whatever the fact may be, the statement is not of the kind which will support an action

under these circumstances. A party who blindly executes an instrument without examination has only his own folly and neglect to complain of. A merchant who is about to execute a security upon his stock in trade ought, in the exercise of reasonable prudence and common sagacity, to scrutinize the terms of the instrument. The alteration in the paper was one which ought to have attracted the eyes of a man without any experience in the transaction of business. It was evidently the erasure of several lines of a printed form. Written conditions were inserted which covered the subject-matter ordinarily provided for by the blank. An alteration of such an unusual sort and to that extent should have attracted even a negligent man's attention and led him to hesitate if it gave the mortgagee rights to which he did not intend to assent. A successful business man of twenty years' experience would most surely have observed it and refused to sign the deed if it was against the purpose which he entertained and the agreement into which he had entered. He cannot complain of his own negligence. *Insurance Co. v. Hodgkins*, 66 Me. 109; *Slaughter's Admr. v. Gerson*, 13 Wall. 379; Cooley on Torts, p. 570; Bigelow on Fraud, p. 526.

The rule is doubtless not an universal one, and to it there are numerous exceptions. We are unable in the present case to discover any of the elements or any of the circumstances found in cases where the courts have held a party excused for his failure to ascertain what he was signing and protect his rights by the exercise of ordinary business care and prudence.

The court did not err in sustaining the demurrer to the complaint and the judgment will accordingly be affirmed.

*Affirmed.*