ALINE, The.

[See I——— v. The I. M. Lewis and The Aline, Case No. 6,991.]

---

## Case No. 202.

**ALKAN et al. v. BEAN et al.**

[8 Biss. 83;[1] 23 Int. Rev. Rec. 351; 10 Chi. Leg. News, 25.]

Circuit Court, E. D. Wisconsin. Oct., 1877.

ENJOINING COLLECTION OF ASSESSMENT—LIEN OF GOVERNMENT—FORFEITURE.

1. Allegations in a bill, that an assessment made by the commissioner of internal revenue, is irregular, and in violation of law, and void, do not constitute ground for an injunction to restrain the collection of the assessment.

[Cited in Kensett v. Stivers, 10 Fed. Rep. 526; Snyder v. Marks, 3 Sup. Ct. Rep. 160, 109 U. S. 193.]

2. Statements by a collector of internal revenue, to the effect that the government has no claim upon distillery property for unpaid taxes, do not affect the right of the government to assert an existing lien for taxes upon such property.

---

[1][Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

3. The remedy by bill in equity to collect assessments, conferred by section 3207, Rev. St., is cumulative.

4. Section 3224, Rev. St., is not limited in its application to the party taxed. A purchaser of distillery property upon which there is an existing lien for taxes due to the government, cannot acquire the same freed from such lien, though he purchase in good faith, for value, and without notice of the lien.

5. In a case where proceedings were instituted, for forfeiture of a distillery, followed by seizure and subsequent release of the property on bond under section 3331, Rev. St., but which were afterwards discontinued by the government without any judicial declaration of forfeiture, a lien for unpaid taxes is not lost or affected by such bonding and release of the property in the forfeiture proceeding, and a subsequent purchaser from the former owner takes the property incumbered by the lien.

In equity.

[Heard on motion to dissolve a temporary injunction that had been granted at the time of the filing of complainants' bill. Injunction dissolved.]

The bill charged, that the defendant, Bean, was collector, and that the defendant, Buckley, was deputy collector of internal revenue for the first collection district of Wisconsin; that the complainant, Alkan, was the owner of certain premises described in the bill, upon which was situated a distillery with all the distilling apparatus appertaining thereto. That these premises were conveyed to Alkan, October 12, 1875, by Lewis Rindskopf and wife; that on the 13th of October, 1875, he leased the property to the complainant Swenger, for the term of two years, at the annual rent of $2,500; that Swenger thereupon took possession of the premises and then began and thereafter carried on the business of distilling spirits thereon; that he executed the proper bond as a distiller, which was accepted by the officers of the United States; that he had paid all taxes upon all distilled spirits made by him, and complied with the laws relating to the distillation of spirits; that previous to the purchase of the property by Alkan, the business of distilling had been carried on by Rindskopf upon said premises; that on the 7th day of October, 1875, the premises, distillery and apparatus were seized by the collector for alleged infractions of the laws of the United States relating to internal revenue; that Rindskopf, as claimant, intervened, applied for the appointment of appraisers and release of the property, pursuant to section 3331, of the Revised Statutes; that appraisers were appointed, an appraisal made, and a bond given; that the distillery premises were released from seizure, and that the bond is still outstanding and in force; that afterwards an information was filed against said property, which recited the seizure, and prayed condemnation, but the prosecution thereof was afterwards abandoned by the United States, and was regularly dismissed. The bill further alleged that prior to the purchase of the premises

and property by Alkan, he informed the collector and deputy collector of his contemplated purchase, and desired to know whether the United States had any claim against the property, and whether there were any unpaid taxes thereon due to the United States; that he was informed by the collector and his deputy that there were no such unpaid taxes, and that the United States had no claim against the property; that relying upon such statements and information he purchased the premises in good faith, and paid $15,000 therefor. That about Nov. 1, 1875, the commissioner of internal revenue assessed a tax upon or against said Rindskopf for $49,427.45, as being due for spirits distilled upon said premises, by Rindskopf, in the months of December, 1874, and January, February, March, April, May and June, 1875. The bill charged that this assessment was made irregularly, and in violation of law, and was void; and alleged further, that this assessment was certified by the commissioner to the defendant collector about Nov. 6, 1875; that the collector issued a warrant under which the premises in question were advertised for sale, to satisfy such assessment, which sale was thereafter abandoned; that on the 19th of May, 1876, the United States filed a bill in equity in this court against Rindskopf, the complainants in the present bill, and others, to subject said property, with other property, to sale, to satisfy said assessment, which bill in equity was still pending; that the property sought to be subjected to sale by that bill, aside from the premises owned by complainant, Alkan, consisted of three distinct parcels, of more value than the whole amount of the alleged assessment. The bill further alleged, that on the 10th of January, 1877, the defendant, Bean, as collector, issued a warrant to the defendant Buckley as deputy collector, for the collection of said assessment, under which warrant a seizure and levy were made upon the premises and distillery in question, and the same were advertised for sale; and the bill charged that such sale would be inequitable and unjust, and would create a cloud upon the title, and destroy the business carried on at the distillery. The prayer of the bill was for a perpetual injunction restraining the proposed sale, and any interference by the defendants with the property and business there carried on.

On filing this bill, a temporary restraining order was granted. The bill was demurred to, and on hearing, the demurrer was overruled. It was at the same time considered by the court that the temporary injunction previously granted should stand until the filing of an answer, when the defendants would be at liberty to move to dissolve that injunction. Subsequently an answer was filed and this motion was made.

The answer admitted the conveyance of the premises by Rindskopf to the complainant, Alkan, and the leasing of the same by

the latter to the complainant, Swenger, but denied that these transactions were in good faith. It alleged that the premises, with the distillery thereon, had been for a long time in the occupancy of, and owned by, Rindskopf, and had been operated by him as a distillery, and various allegations were made in the answer, impeaching the good faith of the alleged purchase and ownership of the premises by Alkan, and the occupancy and possession of the same by Swenger. The answer admitted that the distillery premises were seized, October 7, 1875, by the collector; that the same were appraised and a bond given therefor, and that they were released from such seizure. But it was denied that the bond was outstanding, and it was alleged that the United States took no steps in said proceedings after such release, beyond the filing of an information, and that thereafter and before the issuance of the warrant for distraint and sale of the property, the proceedings were abandoned and notice of discontinuance was filed, and the same were regularly discontinued. It was also admitted that about October 12, 1875, the complainant, Alkan, inquired of the collector if the United States had any assessment against the distillery premises, and stated that he was talking about buying the property; that the deputy collector stated that the collector had no notice of any assessment against the premises, but that he could not tell when or how soon they might have such notice, and that they could give no guaranty against any assessment which might be made. The answer further admitted that the commissioner of internal revenue assessed the tax for $49,-427.45, mentioned in the bill, alleged that such assessment was duly and regularly made, and what were claimed to be the facts and circumstances of the assessment were set forth, that the defendant, Bean, on the 10th of January, 1877, issued a warrant for the collection of said assessment, by virtue of which a seizure of the premises was made, and the same were advertised for sale. It was also admitted that on the 6th day of November, 1875, a warrant was issued for the collection of the assessment, and the premises were under that warrant advertised for sale, but that subsequently those proceedings were abandoned. The filing of the bill in equity, May 19, 1876, by the United States against Rindskopf and others, as alleged in the present bill was further admitted, but it was denied that the property sought to be subjected to sale by that bill, aside from the distillery premises, was of sufficient value to pay and satisfy said assessment. The answer also alleged that the present suit was brought to restrain the collection of a tax, within the meaning of section 3224 of the Revised Statutes.

J. P. C. Cottrill and J. C. McKenney, for complainants.

G. W. Hazelton, for defendants.

DYER, District Judge. By section 3251 of the Revised Statutes, the tax imposed by law on distilled spirits produced from any distillery, is a first lien on such spirits, the distillery used for distilling the same, the stills, vessels, fixtures and tools therein, the lot or tract of land whereon the distillery is situated, and any building thereon, from the time the spirits are in existence as such until the tax is paid. Section 3224 provides that "no suit for the purpose of restraining the assessment or collection of any tax, shall be maintained in any court."

The distillery premises in question, as appears by the bill, were conveyed to complainant, Alkan, October 12, 1875. The assessment by the commissioner was made in November, 1875, but it was for and on account of spirits distilled in December, 1874, and in January, February, March, April, May and June, 1875. So that the tax thus assessed, if legal and valid, was a lien on the property when the spirits came into existence, and unless this lien was subsequently lost, it continued and was in force at the time Alkan took his conveyance from the former owner.

The allegations in the bill that this assessment was made irregularly and in violation of law, and is therefore void, do not furnish ground for the intervention of the court by injunction to restrain the collection of the alleged tax. Upon this point I adopt without hesitation the language of the court in Howland v. Soule, [Case No. 6,800.] "The object of the statute is to prevent the assessment and collection of the public revenue from being hindered or delayed by judicial proceedings, at the instigation and upon the representation of parties interested, to avoid or resist the payment of taxes. The statute would be wholly inadequate to that object if such parties were allowed to maintain suits to enjoin the collection of a tax because, as they say, the proceedings in the revenue department were erroneous or illegal.

"The statute prohibits all suits to enjoin the collection of a tax, and leaves the person who considers himself aggrieved by the collection thereof to the ordinary and usual remedy—an action at law to recover back the amount paid.

"This is a tax within the meaning of the statute. It has the form and color of a tax. It was assessed upon manufactured articles liable to a duty, by a person in office and clothed with authority over the subject matter. The tax has come to the defendant for collection in due course of office, and from the proper authority. The defendant is the person authorized to collect such taxes and by the means proposed—the seizure and sale of the complainant's property."

The lien in favor of the United States could not be waived or affected by any statements made by the collector or his deputy to the complainant, Alkan, to the effect that the government had no claim against the

property, and that there were no unpaid taxes thereon. No such statements or representations could estop the government from asserting any claim [it actually had,][2] or any lien existing in its favor for unpaid taxes. And the complainant could not acquire the property divested of any such claim or lien because he may have relied upon such statements as are alleged in the bill to have been made by the collector prior to his purchase. If such representations or statements were made, they could not bind the government nor affect its rights.

Nor does the fact that at the time the proceedings against this property now sought to be restrained were instituted, there was pending a bill in equity previously filed by the United States under section 3207, to subject this distillery and other property to sale to satisfy the assessment, preclude the government from enforcing its alleged lien or claim by the statutory methods now pursued. The remedies given by the statute are concurrent. No one of them is exclusive. Section 3207, which authorizes the filing of a bill in chancery, does not declare that remedy exclusive, while section 3253 evidently contemplates concurrent remedies.

But it is contended upon other grounds that section 3224 ought not to be enforced against complainants' alleged equities. It is said that the complainant Alkan was a purchaser in good faith without notice of any claim by the government for unpaid taxes upon the distillery premises, and that the statute was not intended to forbid a suit by such a party to restrain the collection of a tax. This position is untenable unless the court can by construction properly add to this section what does not appear by its express terms. The language of the section is plain and comprehensive. "No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." No exception is here stated. The scope of this section is not limited in terms to the party taxed. The evident purpose of the section is, as was held in Delaware R. Co. v. Prettyman, [Case No. 3,767,] "to prevent any interference with the prompt and regular collection of the revenue;" and where the commissioner of internal revenue, in making an assessment, acts within the limits of his jurisdiction, so that his acts cannot be treated as nullities, I am of the opinion, as was held in the case just cited, "that the purpose of the law was to prevent any person disputing by injunction process the validity of a tax assessed under the authority of an act of congress." The lien of the government attaches under section 3251, as we have seen, from the time the spirits came into existence. This being so, how can a person subsequently purchase the property upon which the lien is by law imposed, and which is then existing, freed

from the lien and its consequences, though his purchase may be innocent and without actual notice? In the case of U. S. v. Turners, [Case No. 16,548,] Mr. Justice Swayne held that the provisions of the statute then in force, that the tax shall be a lien on the interest of the distiller in the tract of land whereon the distillery is situated, from the time the spirits are distilled until the tax shall be paid, is absolute and unconditional, and secures to the government a lien upon the distillery premises as against innocent purchasers without notice.

In that case the tax accrued while the Turners were owning and operating the distillery. Subsequently they sold the distillery, and ultimately Stoltz became the innocent owner for value, and as such claimed to be protected. But the court granted a decree in favor of the government for sale of the property upon bill filed to subject the distillery to payment of the tax.

In connection with section 3224, the provisions of section 3226 may be noticed as bearing upon the evident object of the legislation on this subject. That section provides that no suit shall be maintained in any court for the recovery of any internal tax alleged to have been erroneously or illegally assessed or collected until appeal shall have been made to the commissioner of internal revenue, and his decision shall have been had thereon. The purpose of the legislation on this subject plainly is to prevent any interference by suit against the officers of the government with the collection of the tax. As Judge Shipman says, in U. S. v. Black, [Case No. 14,600,] "by the provision that no suit can be maintained for the purpose of restraining either the assessment or the collection of the tax, the statute has in fact provided that payment must be made at all events whether the tax was justly or unjustly levied, and that redress for an unjust exaction must be sought subsequently. The distiller is thus obliged to pay his taxes as they are assessed, and when they mature. If he neglects to pay, payment can be enforced by distraint, in which event his remedy is to pay the tax and appeal to the commissioner. If the appeal is denied, he can then resort to the courts to obtain repayment."

In conclusion, upon this question my view is, that where the assessing officer has jurisdiction to make the assessment, and a tax is assessed, inasmuch as the lien exists from the time the taxable articles come into existence, there cannot be incorporated into section 3224 an exception in favor of a subsequent purchaser of the property to which the lien is affixed, though such purchaser may have acquired the same innocently and without notice. To hold otherwise would, I think, be to disregard the plain and explicit inhibition contained in that section.

The case of Clinkenbeard v. U. S., 21 Wall. [88 U. S.] 65, was cited on the argument by

---

the learned counsel for complainants. The scope of the decision in that case is not to be enlarged beyond what is actually decided. The ruling there is not [and I conceive it cannot be construed to mean][3] that the distiller could have maintained a suit to restrain the collection of the tax, notwithstanding the prohibition of section 3224. Certainly this is not its effect, unless it be determined that the assessing officer in that case was wholly without jurisdiction to make the assessment for the period in question, and so that his act was a nullity. In that case the government attempted the collection of the alleged tax, not by distraint, but by action of debt upon the distiller's bond. The court held that the illegality of the tax could be set up as a defense to the action. Against this position were invoked the provisions of the statute, which declared that no suit shall be maintained for the recovery of any tax alleged to have been erroneously or illegally assessed or collected, until appeal shall have been made to the commissioner, and his decision had. And the court, in construing that section, held it inapplicable, because "the suit thus prohibited is a suit brought by the person taxed to recover back a tax illegally assessed and collected." Mr. Justice Bradley says further: "This is different from the case now under consideration, which is a suit brought by the government for collecting the tax, and the person taxed (together with his sureties) is defendant instead of plaintiff. No statute is cited to show that he cannot, when thus sued, set up the defense that the tax was illegally assessed, although he may not have appealed to the commissioner." From this language [in the opinion which expresses the reason for the conclusion reached][3] it seems clear that if the suit had been one brought by the distiller to restrain the collection of the tax, the court would not have hesitated to say that it was within the prohibition of the statute, and could not be maintained. The closing remarks of the court in the opinion clearly indicate this. "When the government elects to resort to the aid of the courts, it must abide by the legality of the tax. When it follows the statute, its officers have the protection of the statute, and the parties must comply with the requirements thereof before they can prosecute as plaintiffs."

But it is alleged in the bill that on the 7th day of October, 1875, proceedings were instituted by the United States, for the forfeiture of this distillery, on the ground of alleged infractions of the law, and that a seizure of the same was made; that Rindskopf, then the owner, intervened, and procured the appointment of appraisers, and a release of the property on bond, pursuant to section 3331, of the Revised Statutes, which authorizes such proceeding where there is

live stock depending on the products of the distillery for feed, and which would suffer injury if the business of the distillery should be stopped. Further facts [in that case appear by the bill and answer to have been][3] that subsequent to the seizure, an information was filed, and thereafter the proceedings were abandoned and discontinued, and notice of discontinuance was given. It is contended, on the part of complainants, that the release of the distillery on bond, in the forfeiture proceeding, operated as a release of the property from any lien for unpaid taxes; and that the government is now estopped to assert such lien, and must pursue its remedy on the bond. In support of this position, the case of U. S. v. Mackoy, [Case No. 15,696,] has been confidently submitted as a conclusive authority. It is important, therefore, that the case cited be particularly and closely examined.

Mackoy purchased a distillery, and subsequently Mackoy & Co. began the business of distilling and continued the business [for a few months and][3] until the distillery was seized by the collector for violation of the revenue laws. An information was filed and the property was released to Mackoy & Co., upon bond given as required by law, which bond was conditioned to the effect, that if the property should be condemned as forfeited, the obligors would thereupon pay into court the appraised value thereof. Pending the proceedings to have the property declared forfeited, Mackoy & Co. were adjudicated bankrupts. Subsequent to the commencement of bankruptcy proceedings, a trial was had in the forfeiture case, and a judgment of forfeiture and condemnation was entered, which was followed by judgment against the sureties on the bond which had been given for the release of the property. The sureties then moved that the property be ordered to be sold under the judgment of condemnation, and that the proceeds be applied to the satisfaction of the judgment rendered against them. The assignee in bankruptcy also filed a petition for an order authorizing him to sell the property under section 25 of the bankrupt act. The motion made on behalf of the sureties was overruled; and the court directed the marshal to sell the property and return the proceeds into court for future order. Accordingly the property was sold by the marshal to one Mageath, which sale was confirmed, and a deed was executed to the purchaser. Subsequently an action was commenced by the government on the distillery bond to recover taxes assessed against the distillers and unpaid. A bill in chancery was also filed on the part of the United States, reciting the proceedings in the district court, making the assignee in bankruptcy, various lien creditors of Mackoy & Co., the sureties on the bond given on release of the property from seizure, and the purchaser of

---

[3][From 23 Int. Rev. Rec. 351.]        [3][From 23 Int. Rev. Rec. 351.]

the distillery, defendants, and asserting a lien on the property for unpaid taxes, and asking to have the property subjected to the payment thereof. The question was, whether upon the facts so appearing, the bill could be sustained; and it was held that all of the interest of the United States in the property sold, passed to the purchaser, that the United States was estopped to set up as against the purchaser any lien thereon for taxes in existence, and known to it at the time the order for sale was made, and the bill was dismissed.

Now, in this case, there were certain distinguishing features, which clearly controlled the disposition made of it, and which are not to be overlooked.

First — The forfeiture proceedings were prosecuted to judgment of condemnation, and there was a full judicial declaration of forfeiture to the government. By the judgment it was necessarily determined and decreed, that the alleged causes of forfeiture existed, and that the acts had been committed which produced a forfeiture, and in consequence vested the ownership of the property in the United States, at the time of the violations of law.

Second—The liability of the sureties on the bond for release became fixed, and judgment was rendered against them for the amount of the appraised value of the property.

Third—The purchaser acquired his title, not from the original owner, but under a judicial sale, which was confirmed by the court, and which was followed by a marshal's deed to such purchaser, who at once made large improvements upon the property.

Fourth—The United States consented to the sale ordered by the court, and at that time, its bill asking to have the taxes declared a lien upon the distillery property, was pending. In his opinion, Judge Dillon expressly says, that the sale was made with the consent and for the benefit of the United States, and that it was plain upon the evidence: "That it was the intention to sell, to whomsoever should purchase, a clear and perfect title, and that the parties interested should litigate thereafter over the proceeds of such sale." Further, the court says: "There is no evidence to show that the United States intended to keep alive a tax lien upon the property. On the contrary, there is evidence that it abandoned the proceedings by which the property had been seized to secure the taxes now sought to be enforced, and the district attorney was instructed to commence suit on the bond."

Under the circumstances, the judgment of Judge Dillon was, [and he expressly rested his judgment on the circumstances][5] that the marshal's deed passed and conveyed to the purchaser all of the interest of the United States in the property, and that the United States was estopped to set up as against the purchaser any lien thereon for the taxes claimed to be due.

The case, then, was such as has been stated. Does it rule the case at bar? In my opinion it does not. The cases are dissimilar in essential particulars. Here, although forfeiture proceedings were begun, they were never prosecuted to judgment. There was no judicial declaration of forfeiture. There was no judicial ascertainment of the facts necessary to exist as the basis of a forfeiture and the existence of which was essential in order to vest the title of the property in the United States at the time of any violation of law. The proceedings were discontinued. Necessarily the bond fell with the proceedings, because necessarily the terms of the bond and the obligations of the sureties must have been, that the principal should answer and perform the ultimate decree of the court; and if no decree should be rendered because of a discontinuance of the cause, the bond would cease to have any effect and its life would then terminate. Here, too, the sale was by the original owner. The United States was not a party to it; it did not consent to it. It was not a sale for its benefit as in U. S. v. Mackoy, [supra.] The United States did no act evidencing an abandonment of any lien for taxes upon the property.

It is true that in the opinion of the court in the case referred to, it is stated that "the effect of a release of the property on bond is that it may be sold bona fide, and give the purchaser a good title, or liens or rights may be acquired after such release, which will be protected." But this enunciation should be considered in connection with the facts of the case then before the court, and with which the court was dealing. And the scope of the decision is not to be enlarged beyond what is necessary to decide upon the case presented. In that case the proceeding being prosecuted to judgment of condemnation, and the liability of the sureties being fixed by the adjudication of the court, undoubtedly the effect of the release on bond was such as the court pronounced.

Further, the court, in its opinion, speaks of the property as owned by the United States at the time of the violations of law for which it was seized. It must be borne in mind that there was a judgment of forfeiture and condemnation, and, therefore, it was judicially ascertained that the facts existed, that the violations of law had transpired which, eo instanti, divested the title of the original owner.

In the case at bar there was no such ascertainment of facts, but a discontinuance of the forfeiture proceedings, the bond, in consequence, then and thereafter, ceasing to have any force or effect.

In the case of U. S. v. Turners, supra, the spirits upon which the tax was unpaid were removed upon transportation bonds and sold in the market. It was claimed not only that

[5][From 23 Int. Rev. Rec. 351.]

Stoltz was an innocent purchaser for value without notice, but that the lien of the United States upon the distillery was discharged by taking the transportation bond. But Mr. Justice Swayne, as we have seen, held the lien upon the distillery premises valid [notwithstanding][r] as against an innocent purchaser, without notice, for value. And in that case as in this, the title of the purchaser had its source in the former owner.

Considering this case upon all the points presented by the bill and on the argument, I have been unable to reach any other conclusion than, that to continue the preliminary injunction granted in this cause, would be to disregard a statute which forbids any such restraint upon the collection of a tax in favor of the government.

Motion to dissolve injunction granted.