## The People on the relation of The Attorney General v. The Supervisors of St. Clair County.

*Mandamus: Supervisors: County treasurer: Tax sales.* Mandamus is granted to compel the supervisors to spread upon the tax rolls of their county a sum lost by the state in consequence of the failure of the county treasurer to account for moneys received at a tax sale conducted by him.

*Statute construed: Defaults of county treasurer: Liability of county.* The statute (*Comp. L., 1857,* § 924) is very broad, and seems to be intended to cover all possible losses that may arise from the county treasurer's default under the tax law.

*County treasurer: Tax sales: State agent: Official duties.* The county treasurer in conducting tax sales is not acting as agent of the state in such a sense as to put his action in this regard outside his official duties as treasurer, and thereby make the loss by his default in accounting for the moneys received by him on such sales that of the state, and so not chargeable to the county under said statute.

*County treasurer: Tax sales: Official duty: Bond to state: Official bond.* The provision of the statute (*Comp. L. 1857,* § 877) that the county treasurer shall give a bond to the auditor general conditioned for the accounting for money received at tax sales, construed in connection with the statute (*Comp. L. 1857,* § 878) prescribing the requirements of the county treasurer's bond, is held, notwithstanding the provision of the statute (*Comp. L. 1857,* § 878), authorizing the employment by the auditor general in behalf of the state of some other person, in case the county treasurer neglects or refuses to give the bond required by the previous section, to make tax sales, to impose the duty as an official duty upon the county treasurer to make such sales, and his bond to the auditor general is held to be an official bond, and only cumulative security to the state for the proper performance of such duty.

*County treasurer: Defaults: Responsibility of county: State policy.* The provision making the county responsible to the state for the defaults of its financial officer, was incorporated as part of a general system, into the *Revised Statutes of 1846,* under which the townships were subjected to a like responsibility for the collection of county and state taxes by their treasurers, though such treasurers were required to give security to the county in addition to their official bonds.

*County treasurer: Tax sales: Bond to the state.* The state, by taking a bond from the county treasurer under the statute (*Comp. L. 1857*, § 877), does not confine itself to the remedy upon that bond in case of delinquency; the state, in the provision it makes for such cases, does not stand in the position of an adversary party to the county, but has the interests of its municipal subdivisions as much in view as its own; and the providing of further security to the county, is a sufficient reason for the requirement of such additional bond.

*County treasurer: Tax sales: Additional security: State policy.* The precaution of additional security to that of the official bond of the collecting officer may justly be attributed to a prudent and proper regard to the protection of the interests of tax payers against duplicate exactions for the same demands, rather than a purpose to protect its own interests, which are amply protected by the right to levy taxes until all its needs are supplied.

*Laches.* The state is held to have lost nothing by laches; the rule laid down in *Detroit v. Weber, 26 Mich., 284,* as between the city and the sureties on an official bond, is held applicable as between the state and one of its municipal subdivisions.

*Supervisors: Assessing taxes: Mandamus: Alternative remedy.* The board of supervisors having adjourned before being served with the writ requiring them to spread the sum involved in this controversy upon the tax rolls, the court declines to compel them to come together again in order that the amount may be made by tax the present year; the alternative remedy open to the state, to charge the amount over to the county and cause it to be collected another year, is deemed preferable.

*Heard October 21.    Decided October 23.*

Application for *mandamus.*

*Isaac Marston, Attorney General,* for relator.

*Ashley Pond,* for respondents.

COOLEY, J.

This is an application for a *mandamus* to compel the respondents to spread upon the tax rolls of their county for the current year a sum lost by the state in consequence of the failure of the late treasurer of that county to account for the moneys received at the regular tax sales for the year 1865. The defense is that by law the loss properly falls upon the state and not upon the county; but if the contrary of this be ruled, then it is insisted that the state has by laches lost any claim it may have had for indemnity from the county.

The question arises under the tax law of 1853 (*Comp. L. 1857*, § 924), which provides that "all losses that may

be sustained by the default of any county treasurer in the discharge of the duties imposed by this chapter shall be chargeable on said county, and the board of supervisors of such county shall add such losses to the next year's taxes of such   *   *   county." This is very broad, and would seem intended to cover all possible losses that may arise from the county treasurer's default under the tax law. But the respondents raise the question whether, in the performance of the particular duty in the course of which these moneys were received, the county treasurer was not acting as agent of the state, instead of strictly as county treasurer, and whether, consequently, the loss by his default can be presumed to be within the intent of the section referred to.

In support of this suggestion attention *is called* to the section of the statute (*Comp. L. 1857,* § *382*), which provides that "It shall be the duty of the county treasurer to receive all moneys belonging to the county, from whatever source they may be derived; and all moneys received by him for the use of the county shall be paid by him only on the order of the board of supervisors, signed by their clerk, and countersigned by their chairman, except when special provision for the payment thereof is or shall be otherwise provided by law." This section is found in the chapter of the *Revised Statutes of 1846,* prescribing generally for the election, qualification and duties of the several county officers; and its entire silence regarding the particular duty from which the loss in the present case has arisen, coupled with the fact that the treasurer before making the tax sales is required to give bond to the state conditioned for a proper accounting, is relied upon as showing the legislative understanding that the making of these sales was not properly a duty resting upon the county treasurer as such, especially as, in the event of his neglect or refusal to give the requisite bond, the auditor general was authorized by another section to appoint another person as agent of the state in making them, thus leaving it optional with the

county treasurer to make the sales or not as he should elect.

The general provision, however, which makes it the duty of the county treasurer to receive and properly account for all county moneys, was not intended to cover all his official duties. This clearly appears from the requirements of his official bond (*Comp. L. 1857,* § *378*), which, in addition to the condition that this officer should properly account for all moneys received by him officially, must also be conditioned that the treasurer, his deputy, and all persons employed in his office, should faithfully and properly execute their respective duties and trusts, clearly implying that there were official duties and trusts imposed upon the treasurer besides that of receiving and accounting for the county moneys. But the tax law itself contains abundant evidence to the same point. The county treasurer is made an indispensable officer in the system which it provides for, and duties too numerous to mention in this place are specifically imposed upon and to be performed by him officially, and without which it would be impracticable to enforce the collection of taxes. And a reference to the revision of 1846 will show that this provision making the county responsible for the defaults of its financial officer, was there incorporated as part of a general system, under which the townships were subjected to a like responsibility for the collection of county and state taxes by their treasurers, though such treasurers were required to give security to the county in addition to the official bonds, and in case of their default in collection, the county treasurer was to take upon himself to issue process to meet the emergency.—See *Revised Stat. 1846, ch. 20,* §§ *34, 53, 120.*

Nor do we think the circumstance that provision was made for the designation of some other person to make the annual sales in the event of the neglect or refusal of the county treasurer to give the required bond, showed an intent that it should be entirely optional with him to perform or decline this duty. The statute (*Comp. L. 1857,* § *877*)

was imperative that the county treasurer should give the required bond, and the provision which was made for the appointment of a state agent to make the sales in case of his neglect or refusal to give the bond, was not made by way of excuse to the treasurer, but in order that the state should not suffer in its interests in consequence of the official default.

The main question, as it seems to me, is whether the state, by taking a bond from the county treasurer under § *877, Comp. L. 1857*, confines itself to the remedy upon that bond in case of delinquency. If it does not, it is said, there is no sufficient reason for taking the bond, as the state, if it may look to the county, would be abundantly secure without this bond, and from the standpoint of its interest, the taking of such a bond would be a needless ceremony. It must be borne in mind, however, that the state, in the provision it makes for such cases, is not standing in the position of an adversary party to the county, but is supposed to be looking as closely to the *interests of its municipal subdivisions, as to its own.* If the requirement of this bond could give further security to the county, that would be reason sufficient for the state requiring it. That it might do so in some cases is manifest. The amount of tax sales for a year is sometimes largely increased by the irregularities and illegalities of former years, and it is always possible that the general official bond may, for this or some other reason, fall short of adequate security. The precise reason, however, for requiring this second bond, does not seem to me very important. That it is an official bond appears to me manifest, and that it might serve a useful purpose in the protection of the county is undoubted. And when the provision requiring it is followed by so clear and positive a requirement that the losses in consequence of the official defaults of the county treasurer shall be charged over to the county, I see no alternative for the state officers but to do so.

The state has lost nothing by laches. The case of *City*

*of Detroit v. Weber, 26 Mich., 284,* seems to me decisive on this point.   It is suggested, however, that while that case lays down the correct rule as between the state and the sureties on an official bond, it ought to be, and would be, different as between the state and one of its municipal subdivisions.   But why it should be different is not very apparent.   The county is substantially the surety to the state for the officer it has chosen to perform this among other duties.   No authority is referred to as making the distinction suggested, and we are aware of no reason for it. In *People v. Supervisors of Columbia, 10 Wend., 363,* the doctrine that laches is not imputable to the state, was applied against one of its counties without hesitation or question.

As the state has made precisely similar provisions to protect the county against the defaults and dishonesties of township treasurers in the collection of its revenues as are made in respect to county treasurers on its own behalf, the precaution of additional security to that of the official bond, of the collecting officer may justly be attributed to a prudent and proper regard to the protection of the interest of tax payers against duplicate exactions for the same demands, rather than to a purpose to protect its own interests, which, in any view of the law, are amply protected by the right and authority to levy taxes until all its needs are supplied.

These views are in harmony with those of the supreme court of Pennsylvania, expressed in the corresponding case of *Schuylkill Co. v. Commonwealth, 36 Penn. St., 524.*

The writ should issue as prayed.

GRAVES, CH. J., and CHRISTIANCY, J., concurred.

CAMPBELL, J.

I am not entirely satisfied that the duties attending tax sales can be regarded as official duties of the county treasurer, as such; but, as the case requires immediate action,

30 MICH.—50.

and my brethren agree in their views, I do not feel author-
ized to dissent upon the doubt.

The board of supervisors having adjourned before the
writ of *mandamus* was served, the attorney general after-
wards moved. the court to compel them to come together
again, and take action in accordance with the mandate of
such writ.

COOLEY, J.

When these proceedings were commenced the liability of
the county had not been judicially determined, and the case
was not so free from difficulty as to render it improper to
take the opinion of the court upon it.    The question is
now determined; but, in the meantime, the board of super-
visors has adjourned, and it now becomes necessary to deter-
mine whether compulsory proceedings shall be had to bring
the members together, in order that the amount may be
made by tax the present year.   This presents simply a
question of policy, and in determining it, we may prop-
erly regard not only the embarrassments which might be
caused by a compulsory levy at this time, but also any
alternative remedy the state · may resort to.    The alterna-
tive remedy is for the auditor general to charge the amount
over to the county on his books, and cause it to be col-
lected another year.    This he has full power to do, *Comp.
L. 1871*, § *996*, and this course will be entirely free from
embarrassment.    The only difference to the state is that
it will receive its moneys a year later; but, as the amount
will bear interest, the delay will cause no loss.    For this
reason we refrain from any further order.

The other Justices concurred.