## MOORE v. AUDITOR GENERAL.

TAXES—PAYMENT BY CHECK—PURCHASE OF STATE TAX LANDS—PRIORITIES.

A tax is not paid by the giving of a check therefor to the collecting officer, but the lien continues until presentation and payment of the check. Hence, an applicant to purchase state tax land, required by section 84 of the tax law, as a condition to the purchase, to pay all taxes remaining a lien upon the land, who pays the current taxes by check to the local treasurer, is entitled to a deed of the land as against a prior applicant whose application was filed after the giving of the check but before its payment by the bank.[1]

*Mandamus* by John R. Moore to compel Roscoe D. Dix, auditor general, to issue a tax deed. Submitted October 26, 1899. Writ granted January 23, 1900.

*Charles E. Miller* and *Jay P. Lee*, for relator.

*Horace M. Oren*, Attorney General ( *Cahill & Wood*, of counsel ), for respondent.

---

[1] But see Act No. 228, Pub. Acts 1899, approved subsequent to the time when this controversy arose.

LONG, J. This is a *mandamus* proceeding to compel the respondent to issue state deeds to relator for the lands described in the petition, which lands, it is claimed, were held as state tax lands, and were subject to sale as such at the time of the application of relator hereinafter mentioned. It appears that in December, 1898, relator wrote a letter to the auditor general, inclosing $500, and asking for the amount necessary to pay to purchase the lands mentioned. Some correspondence took place between the relator and respondent upon this subject, in the course of which the relator was informed that it would be necessary to pay the 1898 taxes, which were then a lien upon the lands, and which must be paid at the offices of the township treasurers. On the 30th day of January, 1899, the relator sent a check to the township treasurer of Rockland township for an amount sufficient to pay the taxes of 1898 upon so much of the lands as are situated in the township of Rockland; and on the 3d day of February he sent a check to the treasurer of the township of Matchwood for an amount sufficient to pay the taxes of 1898 upon so much of the lands as are in that township. Both of said checks were drawn upon the Bank of Ironwood. A few days later relator received receipts from each of said township treasurers showing on their faces that the taxes of 1898 had been paid.

On the 7th day of February relator went personally to the office of the auditor general, at Lansing, and tendered to the auditor general sufficient money to pay for the deeds mentioned, and exhibited to the auditor general tax receipts from the township treasurers referred to; but the auditor general refused to issue deeds to said relator, upon the ground that applications had been made for the purchase of said lands by Charles M. Turner, on behalf of John M. Longyear and Edward W. Sparrow, as to a portion of the lands; by Edward G. Jones, of Appleton, Wis., on behalf of himself and Rush Winslow, as to a portion of the lands; by one Frederick H. Begole, of Marquette, for a portion of the lands; and by one R. B.

McPherson, of Howell, Mich., on behalf of William McPherson, Jr., for a portion of the lands; that the Turner application, so called, was made on the 6th day of February, 1899; the Jones application, on the 2d day of February, 1899; the Begole application, on the 1st day of February, 1899; and the McPherson application, on the 4th day of February, 1899. Upon being advised by the auditor general that deeds would not be issued to him, the relator telegraphed to the Bank of Ironwood, directing said Bank of Ironwood to withhold payment of one of said checks; but on the next day (being the 8th of February) relator again telegraphed to said bank, advising the payment of the check. Neither of the checks in question was actually paid by the bank upon which they were drawn until after the 7th day of February. The check made payable to the order of the treasurer of Rockland township, for the sum of $687.91, was paid on the 8th day of February, 1899, and the check payable to the treasurer of Matchwood township was paid on the 9th day of February, 1899.

On the 8th day of February the relator made a new application for the purchase of the lands in question, which application was numbered 4,299, and at the same time tendered to the auditor general an amount sufficient to pay the claims of the State against the lands in question, and again demanded deeds for said lands; and the respondent again refused to issue deeds to the relator, upon the ground that previous applications had been made for such lands by said Turner, Jones, Begole, and McPherson. Later, and on the 28th day of March, 1899, relator, together with his attorney, called upon the auditor general, and submitted to him proofs that the taxes of 1898, which were paid in the township treasurers' offices, were originally paid by check of relator, and that the money was not actually received by the treasurers upon said checks until after the said 7th day of February, 1899, and after all the applications had been made by the said Turner, Jones, Begole, and McPherson. At said inter-

view relator insisted that, at the time of the applications of said adverse claimants, the liens for the taxes of 1898 upon the lands in question had not been discharged, and that said liens were discharged on the 8th and 9th of February, respectively, by the payment of relator's said checks; and relator again demanded deeds of the lands in question by virtue of relator's said application No. 4,299. Upon respondent's again refusing to issue such deeds, relator filed the petition in this case, an order to show cause was issued, and the respondent's answer was interposed.

It is the contention of the auditor general that he had the right to rely and act upon the information given him by the relator, and in fact that all the taxes of 1898 had been paid not later than the 3d day of February, which was prior to the time the Turner application was filed for Longyear and Sparrow, and even prior to the time the application was filed by McPherson. The auditor general says in his return that prior to February 6, 1899 (that being the date the Longyear and Sparrow application was filed), the taxes for 1898 had been paid on all the lands described in the relator's petition, and that respondent so understood the fact to be; that, at the time such (Longyear and Sparrow) application was received, respondent understood, from information received from relator, as hereinbefore shown, that the taxes for 1898 upon said lands had already been paid, and were no longer a lien upon said lands, but no formal certificate of such payment up to that time had been filed in the auditor general's office; that the said $7,700 deposited by said Turner (for Longyear and Sparrow) with his application was sufficient to purchase all titles held by the State, and pay all taxes appearing by the books of respondent's office to be due upon the lands described in said list subsequent to the titles so purchased; that from the certificates of the several township treasurers of the townships in which the lands described in said application are located, on file in respondent's office, it appears that the taxes on said lands for 1898 were paid prior to February 6, 1899.

While relator concedes that the checks were given at the times herein stated, he still insists that those payments of the taxes were not completed until the checks were presented by the township treasurers to the bank and actually there paid, which was on the 8th and 9th days of February, 1899, and that therefore his application made February 8, and again presented on March 28, 1899, was the only application made after the taxes of 1898 had been paid to the township treasurers. We think the relator is right in this contention, as matter of law, and certainly the equities of the case are all on his side. If the other applications are to be treated as sufficient, those parties will be given all the benefits derived from the payment of the 1898 taxes by the relator. They paid no part of them, but now seek to have advantage of the payments made by relator. Mr. Justice COOLEY lays down the rule that:

"A tax collector has no authority to receive anything in payment of taxes but such money as at the time is legal tender, or at least passes current. He has no right to receive the promissory notes of individuals; and a bank check is only conditional payment, and the tax will remain in force if the check is dishonored." Cooley, Tax'n (2d Ed.), 452.

This doctrine is recognized in *Kahl* v. *Love,* 37 N. J. Law, 5; *Alkan* v. *Bean,* 8 Biss. 83; *Koones* v. *District of Columbia,* 4 Mackey, 339. The doctrine of those cases is that where an attempt has been made to pay taxes by check, and for any reason the check is not paid, the tax continues to be a lien upon the lands in question, and the lands may be sold, as in ordinary tax proceedings, for the payment of the taxes so remaining a lien. See, also, *Elliott* v. *Miller,* 8 Mich. 132; *Jones* v. *Wright,* 34 Mich. 371; *Turnbull* v. *Township of Alpena,* 74 Mich. 625; *Woodbury* v. *Lewis,* 1 Walk. Ch. 256; *Carter* v. *Lewis,* 27 Mich. 241; *Mumford* v. *Armstrong,* 4 Cow. 553. It must therefore be held that at the time the application of Longyear and Sparrow, as well as all the other

applications, was made, the taxes were a lien upon the property; for, if these checks had not been paid, the treasurers could have returned the lands as delinquent. Under the rule of this court in *Hughes* v. *Jordan*, 118 Mich. 27, and cases following it, no one has the right to a deed of the lands from the State without first paying these subsequent taxes.   When the relator paid his money on February 8, and again made the demand for the deeds on March 28, 1899, these subsequent taxes had been paid, and he was entitled to his deed.   We have not overlooked the cases of *People* v. *Commissioner of State Land Office*, 19 Mich. 470, and *Hubbard* v. *Auditor General*, 120 Mich. 505.   In the first case it does not appear but that the draft in controversy was paid before the rights of the contesting applicant accrued.   In the second case it appears that the checks had been given by the tax-title purchasers, they had been paid, and the deed issued, before the rights of third parties intervened.

The petition of the relator must be granted, and the auditor general directed to issue deeds to him, and cancel the deeds issued to the other parties.

MONTGOMERY, C. J., HOOKER and MOORE, JJ., concurred.   GRANT, J., did not sit.