## COUNTY OF MONTMORENCY *v.* PUTNAM.

1. COUNTY TREASURERS—ACCOUNTING.
   Where a county treasurer and the auditor general merely exchanged receipts for moneys collected by each for the other, the treasurer, if credited with such amount on his settlement with the county, cannot complain of a corresponding charge against him.

2. SAME—SETTLEMENTS—EVIDENCE—PRESUMPTIONS.
   The fact that the undisputed evidence shows the charges in a county treasurer's settlement with the county to be incorrect affords no inference that his credits in such settlement do not include all his proper disbursements.

3. SAME—FAILURE TO PRODUCE CHECKS.

The failure of a county treasurer to produce the checks drawn upon his account, or explain their nonproduction, does not destroy his testimony as to the credits to which he is entitled, but the credibility thereof is for the jury.

4. SAME.

Testimony that a county treasurer deposited in a bank all sums received by him, except small sums properly disbursed from the office, that he never misappropriated or lost any money, and that the books and vouchers had been lost or destroyed, affords some evidence that all the money received by him was properly disbursed, but none that he disbursed for the county money justly chargeable to him but which he never received.

5. SAME—TAX SALES ON CREDIT—LIABILITY OF TREASURER.

A county treasurer is liable for the price of tax lands sold by him at private sale upon credit.

6. JUDGMENTS—APPEAL—REVERSAL—NEW TRIAL.

A judgment will not be entered in the Supreme Court for the plaintiff upon the reversal of a judgment for the defendants for want of evidence to sustain the verdict, where there is no special verdict to warrant it.

Error to Otsego; Shepherd, J., presiding. Submitted October 6, 1903. (Docket No. 3.) Decided December 1, 1903.

*Assumpsit* by the county of Montmorency against Edward J. Putnam, principal, and Lewis Jenson and others, sureties, on a county treasurer's bond. From a judgment for defendants, plaintiff brings error. Reversed.

*James Francis*, for appellant.

*T. A. E. & J. C. Weadock*, for appellees.

CARPENTER, J. Defendant Putnam was treasurer of the plaintiff county for the years 1893 and 1894. This suit is brought against him and his codefendants, who are sureties on his official bond, to recover a balance which it is claimed he never accounted for. This is the third time

the case has been before this court. It will be found re-
ported in 122 Mich. 581 (81 N. W. 573), and 127 Mich. 36
(86 N. W. 398). The first trial resulted in a judgment for
plaintiff for over $4,000. This judgment was reversed
because defendants' counsel was not permitted to argue to
the jury that the settlements hereafter referred to between
the parties to this suit afforded *prima facie* evidence of
the true condition of the account. The second trial resulted
in a verdict in favor of the plaintiff for $1,044. Plaintiff
sued out a writ of error, and this court reversed the judg-
ment on the ground that, according to the weight of the
testimony, plaintiff was entitled to a larger verdict. The
case has been tried the third time, and resulted in a ver-
dict for defendants of no cause of action. Plaintiff asks a
reversal of that judgment on the ground that, under the
undisputed testimony, it was entitled to a verdict, and, if
not, that the verdict should be set aside as against the
weight of the evidence.

The determination of this question requires us to con-
sider the testimony. During defendant Putnam's term
of office he made two settlements with plaintiff,— one in
October, 1893, and another in October, 1894. He made
another in January, 1895, after his term of office expired.
In 1897 he paid plaintiff $94.65 on the claim that a subse-
quent investigation had shown a shortage of that amount
in his accounts. According to the settlements, Putnam
was charged with and accounted for $62,118.82, not
including the $94.65 paid in 1897. The testimony of the
plaintiff in this case strongly tends to prove that defendant
Putnam should have been charged with $68,991.33 and
credited with $63,795.79. The difference between the ag-
gregate of the treasurer's credits as stated in the settlement
and as established by plaintiff is due to the fact that, as
heretofore stated, he paid $94.65 in 1897, and there was
omitted from his credits a payment made by him to the
auditor general of $1,582.32. The difference of $6,872.51
between $68,991.33 (the amount plaintiff claims defendant
Putnam to be chargeable with) and $62,118.82 (the amount

with which he was charged in settlement) is due to the fact that the treasurer was not charged in the settlement with various items with which he was justly chargeable, amounting to $6,876.09, and was improperly charged with $3.58. The evidence of these items, so aggregating $6,876.09, consists of written receipts and acknowledgments made by defendant, and of records made by him. To illustrate, the largest of these items, viz., $3,406.35, payments made by the auditor general, is proved by producing receipts signed by defendant for an amount aggregating $5,219.11, of which amount only $1,812.76 was charged in the settlement.

There is nothing in the testimony of defendants in this case which indicates that these items, or any of them, were not proper charges. On the contrary, their testimony indicates that they were. In making this statement we do not overlook the fact that of the amount of $5,219.11, paid defendant Putnam by the auditor general, he actually received in cash only $995.53, and that the balance, $4,223.58, represents, not cash paid by the auditor general to the county treasurer, but cash withheld by the treasurer in his settlement with the auditor general. The fact was that the State owed the county this $4,223.58 for county taxes collected by the State, and the county owed the State a like amount for State taxes collected by the county. In adjusting this account, instead of exchanging cash or checks, the county treasurer and auditor general exchanged receipts, so that both the State and the county received credit for this amount. It is a complete answer to any contention that the county treasurer should not be charged with this amount to say that he has claimed and received allowance for it among his credits. If, because the county treasurer did not receive the amount represented by these receipts in cash, he should not be charged with it, it follows that the credit side of his account should be reduced by a corresponding amount. It is obvious that the making of this change in the account would not affect the balance claimed to be due from defendants to

the plaintiff. The correctness of this reasoning is supported by the testimony of defendant Putnam, as appears from the following quotation:

" *Q.* Then, Mr. Putnam, if you received credit on the settlement for sending $8.70,—that receipt,—wouldn't you be entitled to charge for the $8.70 that you receipted for to the auditor general?

"*A.* I presume so.   *   *   *

" *Q.* Now, Mr. Putnam, if in that settlement you received credit for the full amount in your hands, $1,055.81, you should be charged for the $28.05 you receipted to the auditor general for receiving from him?

"*A.* I presume I should.

" *Q.* Yes. Then, as a matter of fact, then, you have been credited in your settlement with sending to the State at that date $1,055.81, and we are correct when we charge you up with receiving $28.05, because you receipted for receiving that amount that day?

"*A.* Well, if the receipts are there, it is correct."

In our judgment, the undisputed evidence proves that defendant should be charged with receipts amounting to $68,991.33. It follows, therefore, that, unless there was evidence from which it might be inferred that defendant Putnam was entitled to other credits than those heretofore referred to, plaintiff was entitled to a verdict for the balance claimed.

Was there any evidence from which it could be inferred that there is not included in the credits given the treasurer all his proper disbursements? The fact that his accounts were once settled with the county does not, under the circumstances of this case, afford such evidence. It is true that this court held, when this case was first here (see 122 Mich. 581 [81 N. W. 573]), that those settlements afforded *prima facie* evidence of the state of the account. They afforded *prima facie* evidence of the charges against and credits in favor of said treasurer. In that case, however, the undisputed evidence did not prove that the charges against said treasurer on said settlements were incorrect. In this case, as already shown, the undisputed

evidence does prove said charges to be incorrect. Obviously, this fact makes said settlements no longer *prima facie* evidence of the correctness of the charges against the treasurer. The utmost, under these circumstances, that the treasurer can claim for these settlements, is that they still afford *prima facie* evidence of the correctness of his credits. He receives all that he is entitled to, under this assumption, when he is allowed, as he is now, all those credits.

Can we infer from any other testimony in the record that defendant Putnam is entitled to additional credits ? He testifies that, with the exception of a small amount paid out in cash at the office, he deposited all the moneys received by him during his incumbency of the office with his sureties, who were bankers at Lewiston; that the county seat during part of this time was at Hillman, and during the remainder of the time at Atlanta; that the moneys were deposited in the bank—

"When I went over to Lewiston, generally about once a week, sometimes not quite so often as that. * * * The moneys I took in during the week, and had in my possession on Saturday night, I took over to deposit in the bank. * * * I have never, in any shape or manner or form, used any of the moneys of the county, or taken any of the moneys of the county. I never, in any way that I know of, lost any of the moneys of the county."

That the account was kept in the name of Montmorency county; that included in these deposits were the treasurer's fees, and also some money that belonged to him as the owner of certain tax titles; that, after paying to his successor the balance determined due by the settlements heretofore referred to, there remained in the account a couple of thousand dollars, which it may be inferred from the testimony was his individual money, and which he subsequently appropriated.

This is not the method by which one ordinarily establishes his right to additional credits. He generally establishes such right by proof of particular items. This proof

is generally furnished by the production of vouchers or proper book entries. The failure to produce receipts and vouchers is explained by testimony showing their destruction by the board of supervisors by the consent of defendant Putnam. The failure to produce a book containing entries is explained by testimony that a cashbook (the only book kept by the treasurer) was lost by his successor. I am unable, however, to find in the record any explanation of the failure to produce the checks drawn by the treasurer on his account in the bank. While this failure to produce checks, or account for their nonproduction, might weaken, it does not altogether destroy, the testimony of defendant Putnam. His credibility as a witness was still a question for the jury, and not for the court.

Could the jury, from this testimony, infer that he was entitled to additional credits? If he had deposited in the bank to the account of the county all moneys received by him, except a small amount properly disbursed, and if all the money that was paid from said account was properly disbursed for the county except what belonged to him individually, it follows that he disbursed for the county all cash that came into his hands. If the treasurer did not misappropriate any of said money, if he made no mistake either in receiving or disbursing it, and if the bank kept proper books of account, the inference might be drawn that all moneys not otherwise properly disbursed were deposited in the bank; and his testimony clearly warrants the inference that all the money withdrawn from the bank was properly disbursed. The treasurer testifies positively that he did not misappropriate any money; that "he never, in any way that he knew of, lost any of the moneys." There is no evidence that mistakes were made in counting the moneys. No claim is made that the bank did not keep proper books of account. We think, therefore, that the jury could have inferred from this testimony that all the money received by the treasurer was properly disbursed, and, as this amount concededly exceeds the amount for

which the treasurer has received credit, it follows that they might have inferred that he was entitled to additional credits.

The inference that the treasurer is entitled to additional credits for disbursements is based, it will be observed, entirely upon the assumption that money has passed into and out of his hands. We infer that money has been properly disbursed by him because it has passed into and out of his hands. This testimony does not, therefore, warrant the inference that the treasurer disbursed for the county money justly chargeable to him which never came into his hands. The testimony has no relation to such money. It appears from the uncontradicted testimony that defendant Putnam is justly chargeable with an item of $824 for the sale of lands at a private sale to one E. O. Avery, and that this money never came into his hands. He is responsible for this amount, because he sold these lands to Avery on credit, and Avery never paid for them. (It was this amount, with interest, which constituted the $1,044 for which the treasurer was held liable on the last trial. See 127 Mich. 36 [86 N. W. 398]). No inference can be drawn from the foregoing testimony, or from any testimony in the case, that this money was ever disbursed for the county. Respecting this, counsel for defendants say that on the last trial "it did not appear that Mr. Putnam had not drawn from the county moneys those funds to which he was entitled, but that the same had been permitted to remain in the county treasurer's accounts, and that they are more than sufficient to balance the Avery deed items." We assume that by this it is claimed that, because the county treasurer did not draw from the account in the bank in which the county moneys were deposited certain personal funds until the expiration of his term of office, this is to be charged as an offset against the charge for the Avery deeds. It is sufficient to say in answer to this claim that defendant Putnam did get these personal funds at the expiration of his term of office, and the county received no benefit whatever from their being

deposited with the county moneys.   Under the undisputed testimony in the case, therefore, plaintiff was entitled to a verdict for the amount of $824, the credit extended to Avery, with interest thereon.   It results from this reasoning that there was no evidence to sustain the verdict of the jury, and that the trial court erred in declining, as he did, to set aside the verdict on that ground.

We are asked by plaintiff's counsel to enter judgment for his client in this court.   This we cannot do.   See *Central Sav. Bank* v. *O'Connor*, 132 Mich. 578 (94 N. W. 11); *Schmid* v. *Village of Frankfort*, 134 Mich. 619 (96 N. W. 1056).

As the judgment must be reversed for the error pointed out, and as the evidence on another trial may not be the same as that in this record, we think it unwise to consider the claim of plaintiff that the weight of evidence entitled it to a verdict for the full amount of the balance claimed.

The judgment of the court below will be reversed, and a new trial granted.

The other Justices concurred.