BOARD OF SUPERVISORS OF CHIPPEWA COUNTY *v.* BENNETT.

1. TRIAL—ELECTION OF COUNTS—PLEADING—DECLARATION.

  The plaintiff, in an action upon a bond of a county treasurer, was not required to elect between the counts of the declaration which defendant claimed were inconsistent

because it was alleged in the first count that the treasurer disregarded and neglected his duties in receiving as money certain worthless and dishonored checks from the city treasurer of the city of Sault Ste. Marie, the second count averring that at the expiration of his term he refused to pay over to his successor in office the amount of said checks, and the third count charging that he was indebted to the county in such sum and neglected to pay the same to the plaintiff board upon demand.

2. MUNICIPAL CORPORATIONS— BOND— COUNTY TREASURER — TAXATION.

Where it appeared that the county treasurer accepted unpaid and past due checks from a city treasurer in the county, and it appeared that the city treasurer had received the checks from one of the taxpayers, whom he had advised that he would not issue tax receipts unless the checks were paid, that the taxpayer advised him later that he had arranged with the county treasurer to accept the checks, which were received as cash and held by the county officer, but were never paid, the board of supervisors was entitled to maintain an action on the official bond of the county treasurer; the lands being regularly returned for taxes and never having been charged back by the county treasurer.

3. SAME—STATUTES—CHECKS—PUBLIC OFFICERS.

The effect of Act No. 228, Pub. Acts 1899 (1 How. Stat. [2d Ed.] § 889), which provides that checks received by tax officials shall not operate as payment unless they are paid in due course, was not to justify the county treasurer in accepting such past due paper against which there were no funds in the bank.

4. SAME—STALE CHECKS—BILLS AND NOTES.

The statute did not contemplate that the county treasurer might accept in settlement from a township or city treasurer a stale check, and, after payment had been refused, carry the same upon his books as cash for a period of two years or upwards: the official records are presumed, in law, to show the correct amount due the county at any time.

5. SAME—TREASURER—LIABILITY—ESTOPPEL.

Having carried the checks as cash, and having accepted a renewal check which he carried through his entire term
185 Mich.—35.

of office on the county books as cash, the treasurer was chargeable with the amount thereof as so much cash, and was estopped from claiming that they were not cash, in the absence of any showing on his part or that of his sureties as to how much, if anything, he had received upon the paper.

6. PLEADING — STATUTE OF LIMITATIONS — DEFENSE, NOTICE OF — AFFIRMATIVE DEFENSE—LACHES.

The alleged defense that the plaintiff board of supervisors were guilty of laches in failing to institute suit on the treasurer's bond until after the statute of limitations barred any suit upon the original checks was an affirmative defense which should have been set up by a plea and notice under Circuit Court Rule 7b.

7. SAME—NEGLIGENCE—DELAY.

Where the defendant sureties were in equally good position as the county to obtain information as to the state of the treasurer's books, they could not complain of the delay of the board of supervisors in failing to institute suit until after the statute of limitations had run against the checks.

8. SAME.

A municipality is under no obligation to investigate the character or collectibility of negotiable paper which the treasurer may have taken in payment of taxes and carried upon his books as cash.

ON REHEARING.

9. ESTOPPEL—STATE—MUNICIPAL CORPORATIONS.

It is well settled doctrine in this State that governmental agencies may not be affected by laches or negligence of officials nor will it be held to be estopped from asserting rights against an officer by reason of any acts, omissions, or conduct of auditors, trustees, supervisors, or other public boards; mere nonaction of public officials will not operate as an estoppel.

Error to Chippewa; Fead, J. Submitted January 16, 1915. ' (Docket No. 16.) Decided April 19, 1915. Rehearing denied July 23, 1915. Second rehearing denied December 22, 1915.

Debt by the board of supervisors of the county of

Chippewa against James T. Bennett and others upon defendant's official bond. Judgment for plaintiff. Defendant brings error. Affirmed.

*M. M. Larmonth* (*William P. Belden,* of counsel), for appellants.

*Thomas J. Green* (*Roberts P. Hudson,* of counsel), for appellee.

STONE, J.   This is an action of debt against James T. Bennett, late county treasurer of Chippewa county, and his sureties upon his official bond, bearing date December 31, 1904.

The first count of the declaration describes and sets forth the condition and breach of condition, of the bond and the claim of the plaintiff in the following language:

"For that whereas the said defendants on, to wit, the 31st day of December, A. D. 1904, at Sault Ste. Marie, Chippewa county, Mich., by their certain writing obligatory, sealed with their seals, and to this court now here shown, the date whereof is the day and year aforesaid, acknowledged themselves to be held and firmly bound unto the said plaintiff in the sum of seventy-five thousand ($75,000) dollars, for the payment of which well and truly to be made, the said defendants bound themselves by said writing obligatory. And the said plaintiff avers that the said writing obligatory was and is subject to a certain condition therein written whereby it is provided that if James T. Bennett, one of the defendants herein, who had been on the 8th day of November, A. D. 1904, elected to the office of treasurer of the county of Chippewa and State of Michigan, should as said treasurer and his deputy and all other persons employed in the said office of county treasurer faithfully and properly execute their respective trusts and if such treasurer should pay according to law all moneys which should come to his hands as county treasurer, and render a just and true account thereof whenever so required to do by the board of supervisors or by any provision of law, and deliver over to his successor in office or to

any other person authorized by law to receive the same, all moneys, books, papers, and other things appertaining to or belonging to said office, then the obligation in said bond should be void, otherwise to remain in full force, said bond or writing obligatory together with the sureties named therein having been on the 15th day of January, A. D. 1905, approved by the board of supervisors of Chippewa county, Mich. And as an assignment of the breach of said writing obligatory, plaintiff avers that the said James T. Bennett, one of the defendants named herein, having duly qualified as treasurer of the county of Chippewa, Mich., and having entered into possession of said office on, to wit, the 1st day of January, A. D. 1905, did thereafter disregard and neglect the duties of said office in that he accepted and receipted for as money checks from the treasurer of the city of Sault Ste. Marie, Chippewa County, Mich., as a part of the moneys due the said county of Chippewa, from the said city of Sault Ste. Marie in a settlement made between the said city and county on, to wit, the 17th day of April, A. D. 1905, said checks aggregating the sum of four thousand sixty-six and 70/100 ($4,066.70) dollars, being signed by one Victor E. Metzger and bearing the indorsement of John F. Deadman as treasurer of the city of Sault Ste. Marie, which said checks were taken in lieu of lawful money of the United States in the amount called for on the face of said checks, which said money was then due to said county of Chippewa from said city of Sault Ste. Marie, and which checks bore dates several weeks prior to the date of their delivery to said James T. Bennett, and that although said checks were dishonored when presented at the bank for payment, the said Bennett did not give the city of Sault Ste. Marie or its treasurer notice of dishonor and protest and did not charge back to the city of Sault Ste. Marie the amount called for by said checks but did carry them as cash on his books until, to wit, the 30th day of June, A. D. 1906, when he surrendered said checks to Victor E. Metzger, the maker of same, and received in return one check for the total of the amount of the checks so surrendered, which said check was signed by Victor E. Metzger drawn on the Central Savings Bank of Sault Ste. Marie, Mich., and payable to James

T. Bennett, county treasurer, and that thereafter the said James T. Bennett continued to and did carry said checks as cash on his books until the expiration of his term as county treasurer and that the county of Chippewa, Mich., had not received any money whatever for said check. And the said plaintiff avers that by reason of the said promises the said defendants became and were indebted to the said plaintiff in the sum of six thousand ($6,000.00) dollars. Yet said defendants though often requested have not paid the same or any part thereof to said plaintiff, but wholly neglect and refuse so to do. To the plaintiff's damage of six thousand ($6,000.00) dollars and therefore it brings suit."

The second count alleges that the said county treasurer, at the expiration of his term, neglected and refused to pay over to his successor in office the said sum of money which had come into his possession as such treasurer. The third count of the declaration alleges the indebtedness and the neglect to pay over to the plaintiff upon demand; and the fourth count is general in its language, and alleges the refusal of said county treasurer to pay over to his successor the sum of $4,066.70, due the plaintiff.

The plea was the general issue.

Upon the trial of the case at the circuit the defendants offered no testimony, and, as is said by the defendants, there is little dispute about the facts in the case.

Defendant Bennett was elected county treasurer for his second term in November, 1904, and his term of office expired December 31, 1906. The bond, the substance of which is set forth in the first count of the declaration, was filed January 3, 1905, and was duly approved by the board of supervisors of said county. John F. Deadman was city treasurer of the city of Sault Ste. Marie in the winter and spring of 1905. At the final settlement between defendant Bennett, as county treasurer, and the said city treasurer,

the latter indorsed and turned over to defendant Bennett, as county treasurer, in settlement of the State and county taxes, on or about April 17, 1905, two checks upon the Central Savings Bank of Sault Ste. Marie, signed by V. E. Metzger, one for $3,027.97, and the other for $1,038.73, as part payment of the moneys due from the city of Sault Ste. Marie to the county of Chippewa for State, county, and county road taxes. The said county treasurer, Bennett, gave the said Deadman, city treasurer, a receipt showing the payment of the amount of the State, county, and county road taxes. The said V. E. Metzger was then vice president of said bank, and was the owner of record of a quantity of real estate in Sault Ste. Marie, upon which there was due a considerable sum of money for city, State, county, and county road taxes, and he was also the agent of divers other parties owning real estate in said city, for whom he paid taxes; and he had given to the said city treasurer, some time in the month of January, the two checks above described for unpaid taxes of the year 1904, with the explanation that he (Metzger) did not have that much currency on hand in the bank at that time. Said city treasurer refused to turn over the tax receipts which he had made out, but kept them at the request of Metzger, until about April 17, 1905, when it became necessary to make return of the taxes to the county treasurer. Said city treasurer had telephoned the bank and had been informed that there were no funds to pay said checks. This had been done previous to April 17th. The checks not having been made good at that time, the said city treasurer threatened to return the taxes as delinquent. Upon the promise by Metzger that "he would fix it up with Mr. Bennett," the county treasurer, he (Metzger) asked Bennett to take the checks over from the city treasurer as cash and hold them for a while, which the said defendant

Bennett, as county treasurer, promised to do, and upon a statement made by defendant Bennett, to said city treasurer, Deadman, that "it was all right," the said city treasurer paid the said county treasurer by these two checks, and three other checks upon banks in the city (which latter were ultimately deposited by defendant Bennett, and paid), the full amount due from the city to the county for State, county, and county road taxes, and received from the said county treasurer, Bennett, a receipt as for cash in full payment of the city's indebtedness.

The evidence was undisputed that, at the time these checks were turned over by said Metzger to said city treasurer, the latter understood that there was no money in the bank to meet them, and when the said checks were turned over to the said Bennett, county treasurer, it was understood, both by said Bennett, county treasurer, and said Metzger, that there was no money in the bank to meet them. Those checks were then between two and three months old. Upon the acceptance by said county treasurer of these checks, the city treasurer marked the items of taxes "paid," and issued to said Metzger duplicate tax receipts.

Upon the trial of the case the evidence showed that it was impossible to determine the particular descriptions of land, the taxes upon which were intended to be paid by the "Metzger checks." The books of the county treasurer showed that the items represented by these checks and carried as cash were marked "Metzger checks;" that they were carried as cash in the county treasurer's office from the time of their receipt until the 25th day of May, 1905, when they were deposited in the Central Savings Bank and carried by that bank until the 21st of June, 1905, when they were returned to the county treasurer's office, and the amount carried after that as cash on the county

treasurer's books until an audit by one Clark was made in October, 1910. It should be stated, however, that on or about June 30, 1906, the said two checks were taken up by Metzger, and a new check was given in their place to said Bennett, county treasurer, for the aggregate amount of $4,066.70. There was no evidence that defendant Bennett ever received any money on either of said checks, or that at any time while the checks were in his possession there was money in the bank to meet them. The checks were never protested nor notice of dishonor given.

It was the claim of the plaintiff, upon the trial, that by reason of defendant Bennett accepting these checks and receipting for them as cash, and carrying them as such, he and his bondsmen became liable to the county for the amount of the checks and interest, as for money had and received as such county treasurer. On the other hand, it was the claim of defendants that they were only liable for such amounts of money as actually came into said Bennett's hands, and that no notice of protest or dishonor was necessary, as both Deadman and Metzger knew there were no funds in the bank to meet the checks at the time they were given. It appeared in evidence that at the time these checks were given the real estate assessed to said Metzger carried an assessed valuation of $80,000. The record does not show that any notice was ever given the sureties on said Bennett's bond that any claim was to be made against them by reason of the taking of the Metzger checks, and it was the claim of the defendants that they had no notice until after action had been barred upon the Metzger checks.

At the opening of the case, defendants objected to the introduction of any testimony under the first count in the declaration, for the reason that it did not state a cause of action, as there was no allegation in the declaration that at the time said Bennett went out

of office the said plaintiff could not have charged back to the city of Sault Ste. Marie the amount of said checks; and it was the claim of defendants that the declaration should allege, and the proofs must show, the loss of some right given by the statute to plaintiff before said defendants would be liable. Defendants also asked that plaintiff be required to elect under which count in the declaration it would proceed, as it was admitted that no other shortage was claimed except on the so-called Metzger checks. To this request the court remarked:

"I think the election should probably come when all the testimony is in, unless there is an entirely different transaction than that stated in the opening statement relied upon."

To this ruling defendants excepted, and the matter was not again called to the attention of the court.

At the close of the plaintiff's case, defendants' counsel moved the court to direct a verdict for the defendants, for the reason that there was no allegation in the declaration which showed that the county had suffered pecuniary loss by reason of any act of defendant Bennett as county treasurer; that there was no proof that by reason of the taking of said checks by the county treasurer the county had lost any right on the 1st of January, 1907, to charge back the amount of the checks to the city; that there was no proof or attempt to prove any bad faith on the part of defendant Bennett in accepting said checks in settlement with the city treasurer; and that there was no showing by reason of such acceptance that the county had lost any right for the recovery of money due it from the city. This motion was overruled, and exception taken by defendants' counsel. Certain requests to charge were presented by counsel for said defendants embodying the propositions urged in said motion. Other requests to charge were as follows:

"III.   Under the laws of Michigan a county treasurer has a right to accept checks in his settlement with a township or city treasurer, and is not responsible for any loss which may be occasioned thereby, unless it is occasioned through some fault or negligence of his own.

"IV.   In this case it is undisputed that at the time of the giving of these checks the maker, Metzger, had large holdings of real estate in the city valued on the tax rolls at over $100,000, and was also vice president of the Central Savings Bank of this city, the bank upon which the checks in question were drawn, and it would not be negligence or improper conduct for the county treasurer to accept those checks even though he knew that at that time there was no money in the bank to meet them, but had a right to rely on Metzger's statement that the funds would be there.

"V.   I charge you that Mr. Bennett nor his bondsmen are not liable for any negligence or a failure of duty on the part of the board of supervisors in auditing the books of the county treasurer after the 1st day of January, 1907, and are not liable for any loss which may have accrued to the county because of their acts or failure to act, but could only be held liable for such damages as actually existed when Bennett turned over the office of the county treasurer to his successor, McDonald.

"VI.   I charge you that, as Deadman and Metzger both knew that there were no funds in the bank to meet the check at the time it was delivered to Bennett, there was no necessity for protest or notice of dishonor and they will be deemed to have waived any such notice by reason of such knowledge.

"VII.   The fact that Bennett took a new check from Metzger to himself as county treasurer in lieu of two checks will not relieve Metzger or Deadman from their responsibility unless you find that they were taken and it was intended that they should operate as a payment of the two checks already in Bennett's possession.

"VIII.   I charge you that neither Bennett nor his bondsmen are liable for any damages which may have accrued or loss to the county or city by reason of the failure of Deadman to return as delinquent the

property of Metzger, as that is nothing he could do as county treasurer or under cover of his office.

"IX.   I charge you that, the plaintiff having failed to establish the fact that they have suffered any loss by reason of the act of Bennett in taking those checks, then your verdict should be for the defendants, for no cause of action."

Said requests to charge were refused.

In the course of its charge to the jury the court used the following language, upon which error is assigned:

"Now, the first question which logically presents itself is whether Mr. Bennett was justified in receiving and accepting the two Metzger checks from Dr. Deadman in settlement of the taxes of the county. Now, I charge you that he was under no obligation to receive those checks in payment of taxes; that he could, and would have been within his rights as county treasurer in so doing, if he had refused to accept those two checks and had demanded the cash. But we have a law which permits a public official to receive and accept checks in payment of taxes and other debts owed to the city or municipality for which he acts; such checks, however, not constituting payment unless paid on presentation.

"This statute would not be subject to such a construction as would enable the treasurer to accept any and all checks presented, without incurring any liability himself.  If a check were presented which he knew to be worthless by reason of lack of funds in the bank upon which it was drawn, and the payment of which was known to him to be uncertain or doubtful, he would be deemed to have assumed a responsibility for such consequences as might ensue from his action. So, in this case, the question of Mr. Bennett's good faith is material, and for you to determine.

"If you find that he honestly accepted the checks, in good faith, believing that they would be paid in due course of business, or within a reasonable time, he would be justified to that extent in accepting the checks under this statute.  But if he accepted the checks in bad faith, held them, and continued to treat them as his own transaction, then he would be

liable. That is to say, if he continued to treat them, and also the check which was afterwards given, as his own transaction, then he would be liable.

"Now, after receiving these checks, if you find that he received them in good faith, Mr. Bennett would not be entitled to rely upon the statute as a protection against entire inaction, but would be required to use reasonable diligence in protecting the county from loss. In a proper case, it would be his duty to at once present the checks and have notice of dishonor given the indorser in case they were not paid. But, as the undisputed evidence shows that Dr. Deadman knew at the time he delivered the checks to Mr. Bennett that there were no funds in the bank to pay them, it was not necessary to have notice of protest served upon Mr. Deadman to hold him as an indorser of the checks. But Mr. Bennett could have charged them back to the city treasurer and collected payment for them, regardless of the fact that he did not give notice of their nonpayment. * * *

"To sum up this controversy, gentlemen, I would say that Mr. Bennett was under obligation as an officer during his term of office to use reasonable care and diligence to protect the county from loss. He would have no right to take a check from Mr. Metzger and release the other checks bearing the indorsement of the city treasurer; but, if he did, and thus released the other checks, he and his bondsmen are liable to the county. The principal question is, with what intention and understanding was the second check taken, and, in considering this intention and understanding, you may take all the circumstances into consideration and say what the intention evidently was. Any secret intention which Mr. Bennett may have had contrary to the plain appearance of the circumstances would not release him, but the apparent and reasonable intentions, as shown by the acts, would be those which would control and which you would take into consideration."

The trial having resulted in a verdict and judgment for the plaintiff, there was a motion for a new trial which, with the exception of the claimed error in the admitting of certain testimony, was substantially covered by the requests to charge and the motion for

a directed verdict.   This motion for a new trial was
denied and exception duly taken.   The defendants
have brought the case here upon writ of error, and,
while there are many assignments of error, the de-
fendants have grouped the same under the following
heads:

(1) Erroneous rulings with reference to the scope
of the declaration.

(2) Erroneous rulings as to the admissibility of
evidence.

(3) Refusal to direct a verdict.

(4) Refusals of defendants' requests to charge and
errors in the charge.

(5) Denial of defendants' motion for a new trial.

1. As we understand the propositions of appellants
under the first head, they are embraced in the first
and second assignments of error based upon defend-
ants' objection to the introduction of any evidence
under the first count in the declaration, and their mo-
tion that the plaintiff be required to elect upon which
count it would proceed.

The first count in the declaration, as set forth (be-
fore assigning the breach of the bond), states the con-
dition thereof, as prescribed by the statute (section
2535, 1 Comp. Laws), which we call attention to with-
out repeating the language of the count.   As we read
this count of the declaration, it sets forth the facts
as the evidence tended to prove them:   The taking
of the checks in lieu of money; their exchange for
another check; carrying the checks as cash all of the
time on the books of the county treasurer; and fail-
ure to account for the cash, with resultant loss to
the plaintiff.   And the fourth count alleges the negli-
gence to turn over to his successor in office the said
balance of $4,066.70 due the county as a result of
said county treasurer's failure to perform his duty.
It is worthy of remark at the outset that the county
treasurer's bond, under the statute, is conditioned

that such person and his deputy, and all persons employed in his office, shall faithfully and properly execute their respective duties and trusts, and that such treasurer shall pay according to law all moneys which shall come to his hands as treasurer, and will render a just and true account thereof, etc.

As to the ruling with reference to the election of counts, we think the court did not err. in refusing to require plaintiff to elect at the opening of the case. There was no such inconsistency between the counts, as rendered such election necessary. The court intimated that a motion might be made later, but counsel for defendants failed to again call the attention of the court to the matter. In our opinion the first count states a cause of action which, if supported by the evidence, would warrant a recovery in this case.

2. We have examined the record with much care, and are of opinion that no reversible error was committed in the admitting of evidence.

3. We are of opinion that the court did not err in refusing to direct a verdict for the defendants, and this brings us to the merits of the question involved. A reference to the record discloses that the former city treasurer, Deadman, testified that he stated to Metzger that he would not give Metzger his tax receipts, but would return his delinquent taxes unless he (Metzger) cashed the checks; that Metzger asked him not to return the taxes delinquent, but wait until he could see County Treasurer Bennett; that Metzger later returned, saying that he had arranged it with Bennett, which statement defendant Bennett later confirmed. This testimony is absolutely uncontradicted by any witness. The record shows, and it is conceded by appellants, that Bennett did take the checks, receipted for them as cash, entered them on his books as cash and so carried them to the end of his term. Metzger testified:

"I asked him to take the checks over from the city treasurer as cash and hold them for a while. He said he would."

And defendant Bennett's treatment of the checks subsequently clearly indicates that he was as good as his word and held the checks as his own personal obligation. The record shows that this man Bennett was just entering upon his second term as county treasurer. Metzger had been one of his sureties upon his former bond to the county. He knew his duties as county treasurer. It is inconceivable that defendant Bennett did not know that the result of his action was the surrender of the tax receipts by the city treasurer to Metzger, the marking "paid" upon the said rolls of the taxes for which the checks were given, for, with the said rolls in his possession, had there been any question about it, he could have effectually settled the question by an examination. Not only was Metzger's property involved in that payment, but with those checks he had paid taxes on other people's property for whom he was agent. Counsel for defendant claim that these checks might have been charged back to the city. Whose duty was it to furnish the information necessary to charge these checks back to the city, if it was not the duty of defendant Bennett? And who but he knew that these taxes had been returned as paid, and that he had received these overdue and dishonored checks as cash in lieu of the taxes due the county? Is it possible that, under our system, a county treasurer can, as the homely saying is, receive as cash, "cats and dogs," or worthless paper, for taxes due the county, and carry the same upon his books for two years as cash (others interested being in ignorance of the fact) without incurring liability upon his bond? Counsel for defendants also urge that these unpaid taxes could have been charged, and may now be charged back to the city. Whose duty was it to call attention to, and attend to, that

matter? The tax roll itself had shown these taxes paid. There is no question here about the regularity of the assessment of the taxes. They were not returned as delinquent. Nobody knew this better than the county treasurer. It appeared upon the trial that it was impossible to identify the lands for the payment on which these checks were given. To charge back these taxes upon the city at large would be unjust to the taxpayers, who paid their taxes.

Whose duty was it to call the attention of the board of supervisors to the matter of charged back or rejected taxes? The auditor general could not know of this irregularity from any report which had been made to him by the county treasurer. Under sections 3918, 3919, and 3920, 1 Comp. Laws, there is no machinery provided for the charging back of taxes in the condition shown by this record. It appears undisputed that Deadman, the city treasurer, did not know that these checks were unpaid until nearly six years after he had indorsed them over to the county treasurer. The final check seems to have been turned over by defendant Bennett to his successor in office as so much cash, but the successor did not receipt for the amount. All of this was unknown to the county or the plaintiff until 1910.          ,

It is urged by appellants that the taking of these checks by County Treasurer Bennett in the first instance was justified by the provisions of Act No. 228, Pub. Acts 1899 (1 How. Stat. [2d Ed.] § 889). We do not so understand the statute. The history of the enactment of this statute is well known to the profession. Questions had arisen as to the effect of the tender of a check or draft in the purchase of State tax lands, and the payment of taxes to county treasurers as incident thereto. See *Moore* v. *Auditor General*, 122 Mich. 599 (81 N. W. 561). That act provides that:

"Whenever any check or bank draft shall be tendered for the payment of any debt, taxes or other obligation due to the State or to any municipality therein, such check or draft shall operate as a payment made on the date said check or draft was received and accepted by the receiving officer, if it shall be paid on presentation without deduction for exchange or cost of collection: *Provided, however,* that no receiving officer shall be required to receive in payment of any debt, taxes or other obligation collectible or receivable by him any tender other than gold or silver coin of the United States, United States treasury notes, gold certificates, silver certificates, or national bank notes."

There can be no question upon this record that, when County Treasurer Bennett entered the checks on the county treasurer's books as cash, he knew there were no funds in the bank to pay them. The fact there were no funds in the bank was the real occasion and reason for his having accepted the checks in the first instance. When, a month later, he deposited them in the bank upon which they were drawn, and where they remained for a month and were then returned to him and again charged to him as county treasurer, his attention was certainly again called to the fact that these checks were dishonored, if not worthless paper.

There is nothing in the holding of this court in *City of Sault Ste. Marie* v. *Hotten,* 171 Mich. 265 (136 N. W. 1119), that justifies the conduct of defendant Bennett. In that mandamus proceeding, referring to the then county treasurer, this court said:

"The city treasurer had a right to accept the checks for taxes, but, if the same were not honored, it would not amount to payment.  *  *  *  Whether the respondent acted with diligence after accepting the checks, whether he presented them for payment within a reasonable time, and whether relator was given the proper notice of the dishonor of the checks, are questions which ought not to be gone into on this record."

185 Mich.—36.

We think the charge of the court upon this·subject was as favorable to the defendants as they could ask. It was never contemplated by the act in question that the county treasurer, in settlement with a township or city treasurer, could ·accept stale checks, and, after their payment had been refused on presentation, carry them upon his books as cash for a period of two years. See *Staley* v. *Columbus Township,* 36 Mich. 38.

The official books of the county treasurer are presumed to show the correct amount due from that officer to the county at all times. *State Bank* v. *Chappelle,* 40 Mich. 447.

The general provisions of the statute which make it the duty of the county treasurer to receive and properly account for the county moneys was not intended to cover all his official duties. This clearly appears from the requirements of his official bond, which, in addition to the condition that this officer should properly account for all moneys received by him officially, is also conditioned that the treasurer, his deputy, and all persons employed in his office, shall faithfully and properly execute their respective duties and trusts, clearly implying that there are official duties and trusts imposed upon the treasurer beside that of receiving and accounting for county moneys. He is an indispensable officer, charged with many duties. *Attorney General* v. *Supervisors,* 30 Mich. 388.

In our opinion defendant Bennett, having taken the checks for cash, having carried them, or the renewal check, throughout the balance of his term of office, nearly two years, on his books as cash, is chargeable with the amount as cash, and should be held estopped from claiming otherwise, especially in the absence of any showing from him or his sureties as to what or how much, if anything, he had received upon the checks, or any of them. Having received the checks as cash, he must be charged with them as cash.

*County of Montmorency* v. *Wiltse,* 125 Mich. 47 (83 N. W. 1010) ; *County of Montmorency* v. *Putnam,* 127 Mich. 36 (86 N. W. 398) ; *County of Montmorency* v. *Putnam,* 135 Mich. 111-118 (97 N. W. 399).

It is further urged, in this connection, that the plaintiff has been guilty of laches in lying by, and not bringing this action until after the statute of limitations had run as to the Metzger checks. It already appears that the plea in this case was the general issue. No defense of the statute of limitations, or of laches, was interposed in the case. That this defense is not available to these defendants is apparent from an examination of Circuit Court Rule 7*b*. Such defense would be an affirmative defense, and not available under the general issue. This rule has been applied by this court in many cases. *Bryant* v. *Kenyon,* 123 Mich. 151 (81 N. W. 1093) ; *Wallbridge* v. *Tuller,* 125 Mich. 218 (84 N. W. 133) ; *Putze* v. *Insurance Co.,* 132 Mich. 670 (86 N. W. 814, 94 N. W. 191) ; *R. K. Carter & Co.* v. *Weber,* 138 Mich. 576 (101 N. W. 818) ;. *Scott* v. *Longwell,* 139 Mich. 12 (102 N. W. 230, 5 Am. & Eng. Ann. Cas. 679) ; *J. Richardson & Co.* v. *Noble,* 143 Mich. 546 (107 N. W. 274), and other cases.

Upon this record it may be said that the defendants were as well informed in regard to the condition of defendant Bennett's books as county treasurer, and his account with the county, as was the plaintiff itself, and had equal means of investigation.

We have examined the cases cited by defendants and think they can be readily distinguished from the instant case. The county having been damnified by the unlawful conduct of the said county treasurer, as above indicated and pointed out, it cannot be said that the sureties were released because of delay in discovering the default of the treasurer. *City of Detroit*

v. *Weber*, 26 Mich. 284-293; *Board of Education* v. *Andrews*, 142 Mich. 484-487 (105 N. W. 1118) ; *United States* v. *Hart*, 95 U. S. 316.

We think the case of *County of Montmorency* v. *Wiltse*, above cited, clearly indicates that a municipality is not required to investigate the character or collectibility of any paper which the treasurer may take in the payment of taxes, and carry as cash.

We do not dwell upon the other assignments of error for the reason that we are of opinion that the trial court might well have directed a verdict for the plaintiff under the first count in the declaration, and that, if any errors were committed in the trial of the case, such errors were harmless.

Finding no prejudicial error in the record, the judgment of the circuit court is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, OSTRANDER, BIRD, and MOORE, JJ., concurred. STEERE, J., did not sit.

### ON REHEARING.

PER CURIAM. On motion for rehearing, Justice STEERE taking no part in the case.

In this case the plea was the general issue. It was urged as a defense that plaintiff had been guilty of laches in delaying the bringing of suit until after the statute of limitations had run upon the checks, and that therefore plaintiff was estopped from recovery.

Aside from the question of pleading, there is an insuperable objection to the assertion of this claim by the defendants. This action is one virtually by the county in its governmental capacity, brought in the name of the board of supervisors because of the statute. Section 2466, 1 Comp. Laws. *Johr* v. *St. Clair Supervisors*, 38 Mich. 532.

It is the well settled doctrine in this country, founded upon the most substantial dictates of reason and

sound policy, that the government cannot be affected by the laches of its agents, or estopped from asserting its rights against an official servant, by the acts or omissions of auditors, trustees, supervisors, or other guardians of public rights. *Board of Commissioners* v. *Dickey,* 86 Minn. 31 (90 N. W. 775-779), citing Mechem, Pub. Officers, § 924, and cases cited; *Seymour* v. *Van Slyck,* 8 Wend. (N. Y.) 403-422; *United States* v. *Kirkpatrick,* 9 Wheat. (U. S.) 720; *United States* v. *Van Zandt,* 11 Wheat. (U. S.) 184; *Gibbons* v. *United States,* 8 Wall. (U. S.) 269-274. See, also, *Lake Shore, etc., R. Co.* v. *People,* 46 Mich. 193 (9 N. W. 249) ; *City of Detroit* v. *Weber,* 26 Mich. 284; *People* v. *Supervisors of St. Clair County,* 30 Mich. 388; *Plumb* v. *City of Grand Rapids,* 81 Mich. 381-394 (45 N. W. 1024) ; *Day Land & Cattle Co.* v. *State,* 68 Tex. 526 (4 S. W. 865) ; *Conwell* v. *Voorhees,* 13 Ohio, 523-533 (42 Am. Dec. 206).

Mere nonaction of corporate officers will not work an estoppel of the corporation. *Board of Supervisors* v. *Lincoln,* 81 Ill. 156.   See cases cited in 16 Cyc. p. 782.

Motion for rehearing denied.